304 P.2d 1097

John B. MORSE, Plaintiff-Appellant,

v.

LOCAL UNION NO. 1058 CARPENTERS & JOINERS OF AMERICAN FEDERA-TION OF LABOR and Alex Nelson, Busi-ness Agent, Defendants-Respondents.

No. 8437.

Supreme Court of Idaho.

Dec. 18, 1956.

May & May, Twin Falls, for appellant.

Hugh C. Maguire, Jr., Pocatello, Clarence M. Beck, R. W. Nielson, Salt Lake City, Utah, for respondents.

PORTER, Justice.

By his complaint in this action, appellant seeks both actual and punitive damages arising from his discharge from his employment as a carpenter. He alleges that his discharge was brought about by and resulted from the wrongful acts and conduct of defendants. Respondents, by their answer, among other things, allege that the acts and conduct of which appellant complains, if true, constitute unfair labor practices; that the trial court has no jurisdiction to entertain this suit and that exclusive jurisdiction over the matters involved in this action lies with the National Labor Relations Board.

At the close of plaintiff's case at the trial, defendants moved for a nonsuit on the ground that the trial court had no jurisdiction to try the cause which motion was by the court granted and the cause dismissed. From such judgment of dismissal, appellant has appealed to this court.

On September 20, 1954, S. M. Horman, of the Horman Construction Company, a co-partnership, had a contract with the J. C. Penney Company, to purchase the building and site occupied by the J. C. Penney store in Twin Falls. The Horman Construction Company was to tear down the old building and erect a new one and the J. C. Penney Company had been given a long term lease on the new building. The S. M. Horman Construction Company was a Salt Lake City, Utah, firm and was engaged in the construction business in Utah, Idaho and Nevada.

Appellant was a carpenter living in Twin Falls and had lived there for thirty-five years. He was a member in good standing of the Carpenters & Joiners of America, a branch of American Federation of Labor, and had his membership in Local No. 55,

Jerome, Idaho. He was not a member of the Twin Falls Local Union of Carpenters & Joiners No. 1116. On the evening of September 20, 1954, appellant met S. M. Horman near the J. C. Penney building and applied for a job as a carpenter in tearing down the old building and the construction of the new building. Witness, S. M. Horman, testified that the following conversation then took place:

"Q. What happened there with reference to you and Mr. Morse? A. He started to telling me what they were going to do. He was talking with another man—

"Q. I mean the evening you hired him. A. That is what I mean. He was talking with another man, telling him what was going to go on. I stopped—just looking there. He turned to me. He said, 'They are going to build a new building here.' I said, 'Yes, I know. I am going to build it.' He said, 'Well, that's fine. Can you give me a job? I am a carpenter.' I said, 'Well, I am going to run a union job, so are you a union man?' He said, 'Yes.' I said, 'You are in good standing?' He said, 'Yes.' I said, 'Are you from Twin Falls?' He said, 'Yes, I live here, have for years.' I said, 'Well, are you permitted to rustle your own work or do you have to clear with the Union?' He said, 'No, we can rustle our work.' I said, 'Okeh, you can come on the job in the morning, then, and go to work.' "

Appellant was thereupon employed as a carpenter and went to work the following morning.

Respondent, Alex Nelson, was the business agent of Twin Falls Local Carpenters & Joiners Union. About one hour after appellant went to work, respondent Nelson appeared at the building being torn down and there advised Horman that appellant could not work on such job as he was not a member of the local union. Horman testified that the following conversation then took place between the witness, Morse and Nelson:

"Q. Now, can you remember just what was said by all three of you people at that time? A. Well, I asked Mr. Morse—I said, 'Aren't you a member of the Union?' He said, 'Yes, I am.' I said, 'This gentleman says that you are not a member of this Local.' He says, 'That don't make any difference. I am a member of the Jerome Local; I live here, and it entitles me to work here.' I said, 'Well, you would have to transfer in here.' He said, 'I will transfer. I will transfer immediately.' But the business agent said, 'Well, you can't transfer in here. We are filled up. And we have got men that are not employed. We are going to use our Twin Falls men first.'

"Q. This business agent, what did he say to Mr. Morse besides that? A. He told him he couldn't work. He said, 'You can't work here. We have got our own men that have got to go to work. Some of them have got to have employment.'

"Q. Did you say anything? A. I said, 'Mr. Morse,' I said, 'you have got to get yourself straightened up with the Union if you want to work on the job.' "

Both the Jerome Local Union No. 555 and the Twin Falls Local Union No. 1116 were members of the Rocky Mountain District Council of Carpenters of Idaho. The rules of such Council provide that local qualified carpenters shall always have preference on local projects.

Appellant had worked about one hour and never thereafter worked on the project.

Local Union No. 555 of Jerome and Local Union No. 1116 of Twin Falls were later consolidated as Local Union No. 1058 under which designation the consolidated union is a party to this action as a defendant.

In the demolition of the old building and the construction of the new building and in its construction work in Idaho and Nevada, the Horman Construction Company shipped materials from Utah; let numerous subcontracts to Utah firms and otherwise engaged in interstate commerce in its general construction work.

Under the Federal Labor Management Relations Act of 1947, unfair labor practices are defined in part in 29 U.S.C.A. § 158, as follows:

"(a) It shall be an unfair labor practice for an employer—

* * * * * *

"(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization * * *.

* * * * * *

"(b) It shall be an unfair labor practice ʼfor a labor organization or its agents—

* * * * * *

"(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) of this section or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership; * * *."

29 U.S.C.A. § 160(a), reads in part as follows:

"(a) The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 158 of this title) affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise; * * *."

29 U.S.C.A. § 152, subsection (7), reads as follows:

"(7) The term 'affecting commerce' means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce."

It appears from the pleading and proof of appellant that this suit involves unfair labor practices on the part of an employer and a labor organization and its agent. The question then arises as to whether the Labor Management Relations Act vests exclusive jurisdiction in the National Labor Relations Board to hear and determine such issues and to redress any wrong arising from such acts or whether in addition to the jurisdiction of the National Labor Relations Board, a tort action will lie in the courts for damages.

Appellant cites numerous cases to support his contention that an action in tort in the state courts may be brought for damages. Among such cases, he cites United Construction Workers, Affiliated with United Mine Workers of America v. Laburnum Construction Corp., 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025. However, in such case the action in the state court was for damages for past acts of violence for which the Labor Management Relations Act provides no remedy or redress for the damage suffered.

The respondents likewise cite numerous cases to support their contention that the exclusive remedy of appellant lies in proceedings before the National Labor Relations Board and that such Board can provide a remedy for appellant by way of reinstatement and back pay. Respondents rely particularly upon Born v. Cease, D.C., 101 F.Supp. 473, affirmed in Born v. Laube, 9 Cir., 213 F.2d 407, 410, a rehearing denied in 9 Cir., 214 F.2d 349, and appealed to United States Supreme Court by Writ of Certiorari which was denied, 348 U.S. 355, 75 S.Ct. 80, 99 L.Ed. 674.

In the Born case, Born was a member of the Teamsters Union and being without employment in that classification, took another job in another classification within the jurisdiction of another union. Cease, the trustee of the Teamsters Union, issued Born a withdrawal card. Sometime later Born was offered and took a job as a truck driver and immediately sought reinstatement in his former local. Cease refused

such reinstatement and threatened to call all of the teamsters off the project unless Born should be immediately discharged. The employer discharged Born as a driver and he was obliged to undertake another type of labor.

After trial of the cause defendants urged its dismissal on the ground that the power and authority to hear and determine the subject matter had been exclusively delegated to the National Labor Relations Board and that the federal district court was without jurisdiction. The action was dismissed for lack of jurisdiction. Upon the appeal to the Circuit Court of Appeals, Ninth Circuit, the action of the district court was affirmed. The appellate court held that the conduct of the agent Cease constituted an unfair labor practice and the court further said:

"Decisions touching the subject under inquiry, of which there are many, have quite uniformly adhered to the view that the Act's provisions for a comprehensive remedy preclude other action by way of a different or additional remedy for the correction of the same grievance. It would be a work of supererogation to cite or to review these authorities. A very late decision of the Supreme Court, namely Garner v. Teamsters, Chauffeurs and Helpers Local Union No. 776 (A.F.L.) Union, 346 U.S. 485, 74 S.Ct. 161 [98

L.Ed. 228], is illustrative of the general trend of thought in that tribunal. The discussion there shows the imminent likelihood of conflict where the attempt is made to apply different remedies on the basis of an assumed distinction between rights which are public and those which are claimed, as here, to be purely private."

In denying a petition for rehearing, the Circuit Court of Appeals distinguishes the case of United Construction Workers, Affiliated with United Mine Workers of America v. Laburnum Construction Corporation, supra, and says:

"The petition for rehearing is predicated largely upon the claim that our decision is in conflict with the intervening holding of the Supreme Court in United Construction Workers [affiliated with United Mine Workers of America] v. Laburnum Construction Corporation, 347 U.S. 656, 74 S.Ct. 833 [98 L.Ed. 1025].

"We have carefully considered the Laburnum decision and are of opinion that it is distinguishable inasmuch as the complaining party there, under the Labor Management Act, 29 U.S.C.A. § 151 et seq., was wholly without remedy in damages for the tortious conduct of the Union. Here the complaining employee had available the remedy of reinstatement with back pay. Moreover,

unlike Laburnum, there was no violence or threat of violence which might serve to bring the cause within the area of the Territorial police power."

It would add little to this opinion to collect and attempt to collate the cases cited by the parties and other cases of similar import. We are of the opinion that under the Labor Management Relations Act, the actions of the respondents alleged in the appellant's complaint and in proof of which he submitted evidence, are unfair labor practices affecting interstate commerce; and that the National Labor Relations Board is clothed with exclusive jurisdiction to hear and determine such issues and to afford redress for such alleged wrongful acts. Such acts do not involve violence whereby the police power of the state might be invoked and do not involve past damages for which the National Labor Relations Board is not empowered to afford relief.

The remedy by proceedings before the National Labor Relations Board was exclusive and the trial state court was without jurisdiction. The judgment of the trial court dismissing the action for lack of jurisdiction is affirmed. Costs to respondents.

TAYLOR, C. J., and ANDERSON and SMITH, JJ., concur.

KEETON, J., dissents.