FRANCIS L. MCDERMOTT vs. JOSEPH J. JAMULA & others.

Berkshire.    September 25, 1958. — December 9, 1958.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Unincorporated Association.   Labor and Labor Union.   Custom.   Waiver.
Estoppel.   Equity Pleading and Practice, Appeal.*

An order in writing by an appellant in a suit in equity for preparation of
the necessary papers for transmission to this court was not invalid
because given before the commencement of the period within which
it was required to be given.  [240–241]

A member of an international labor union and of a local union may main-
tain a suit in a State court to avoid an alleged wrongful suspension
from membership in the unions and for damages notwithstanding the
Federal labor management relations act of 1947, as amended.  [241]

Provisions of the constitution of a labor union that monthly dues should
be collected from members "in advance" and that "any member
indebted . . . for three months' dues" should "stand suspended"
meant that a debt would arise for unpaid dues not later than midnight
of the first day of the month for which the dues were payable, so that a
certain member who failed to pay the dues payable for three successive
months became "indebted . . . for three months' dues" at midnight
on the first day of the third month; there was no merit in a contention
that a subsequent provision of the constitution, that any member
suspended "for being in arrears for three months" might apply for
reinstatement, so controlled the interpretation of the provision for
suspension that the member in question would not "stand suspended"
until the expiration of three months after the first day of the first
month.  [242–243]

A custom of a labor union respecting payment of members' dues could not
affect the plain meaning of unambiguous articles of the union's con-
stitution concerning that subject.  [243]

The record in a suit in equity against an international labor union and
one of its local unions, which had incorporated in its by-laws the inter-
national union's constitution by reference, did not require a finding
that the international union had construed provisions of its constitu-
tion in accordance with a custom adopted by the local union, and the
custom could not affect the meaning of such provisions.  [243–244]

The record in a class suit in equity against the members of an unincor-
porated labor union by a member suspended therefrom for failure to
pay dues did not show that strict compliance with a provision of the
union's constitution respecting the payment of dues could have been

or was waived or that the defendants were estopped to rely on such provision. [244–245]

BILL IN EQUITY, filed in the Superior Court on July 1, 1955.

The plaintiff appealed from an interlocutory decree by *Quirico*, J., confirming a master's report and from a final decree by *Thompson*, J., dismissing the bill.

*W. Stanley Cooke*, for the plaintiff.

*Clement A. Ferris*, (*L. George Reder* with him,) for the defendants.

CUTTER, J. This is a bill in equity by a licensed electrician against several defendants as representative of the entire membership of Local 284 of the International Brotherhood of Electrical Workers (hereinafter called Local 284) and of the brotherhood itself (hereinafter called I. B. E. W.) alleging unjust suspension from both Local 284 and I. B. E. W. and seeking (a) to be treated as if he had not been suspended, and (b) damages for the alleged wrongful suspension. A demurrer was overruled and the case was referred to a master whose report states the following relevant facts.

The plaintiff prior to March 1, 1953, had been a member in good standing of Local 284 and of I. B. E. W. He did not pay any of his monthly membership dues and assessments, amounting to $9.10 per month, for March, April, or May, 1953, until Monday, June 1, 1953, when early in the morning he purchased a money order for $9.10 payable to "I. B. E. W., Local 284," and mailed it to the financial secretary. The financial secretary received the money order on June 2, 1953, and returned it to the plaintiff with a letter reading in part: "I am returning your money order of $9.10, postmarked June 1, 1953. Being three months in arrears, your money order was postmarked one day after the deadline which was May 31, 1953. This is to notify you that you now stand suspended from all benefits of this local union, and can only be reinstated by the local union, providing you comply with the laws and rules of the constitution in article 24, section 1–6 inclusive."

The pertinent provisions of the constitution (hereinafter sometimes called the constitution) of I. B. E. W. and of the

McDermott *v.* Jamula.

by-laws of Local 284, as found by the master, are set out in the margin.[1] The plaintiff has not at any time applied for reinstatement in accordance with art. XXIV, § 1, but, on the present record, we can consider the case as if the plaintiff had pursued all other appropriate remedies within the union.[2]

It had "been the custom of Local 284 for at least three years prior to 1953 to permit members to pay dues at any time on or prior to the last day of the third month from the time when the dues were first payable. . . . [I]f the . . . [plaintiff] had paid his dues . . . on Sunday, May 31, the dues payment would have been accepted and the . . . [plaintiff] would not have been suspended . . . . [W]ithin the local this custom had become accepted practice . . . known to and followed by local members. It was also the . . . custom . . . to accept the postmark date . . . as the date on which payment was made."

The plaintiff was not regarded as a good union man by the financial secretary and the business manager of Local

---

[1] The constitution, art. XX, § 1, reads in part, "L. U.'s [local unions] shall *collect* dues from members either monthly or quarterly *in advance* . . . ." Article XXIII, § 3, reads in part, "Any member *indebted* to his L. U. for *three months' dues*, or having any past due indebtedness to the I. B. E. W. for dues . . . shall stand suspended, and the L. U. may refuse to accept dues from any member who is indebted to it. Such member cannot be reinstated until all *indebtedness* has been paid, unless remitted by the L. U. However, dues cannot be remitted." Article XXIV, § 1, reads, "Anyone suspended for being *in arrears for three months*, but less than six months, may apply for reinstatement. . . ." Article XVII, § 8, provides that the constitution "shall be considered a part of all L. U. bylaws and shall be . . . binding on each . . . L. U. member." The by-laws of Local 284, art. XIII, § 13, make the constitution of I. B. E. W. "a part of these bylaws." Article X, § 4, of the by-laws reads, "Dues are *payable* monthly *in advance*. Members who fail to pay their dues in accordance with the requirements of this Section may be removed from the job . . . until such time as all dues are paid." The italics in these quotations have been supplied for purposes of convenient reference.

[2] The master found that the union waived any formal requirements of the appeal procedure provided and "passed upon the appeals of the" plaintiff, which may have been prosecuted somewhat informally. The master also found that a final appeal to the I. B. E. W.'s international convention would have been denied and that "[a]ssuming that the suspension was improper . . . the . . . [plaintiff] pursued his remedies within the union so as to entitle him to appeal to court for the relief . . . which he is here seeking." The defendants in their brief appear to make no contention that the plaintiff has not in fact pursued his remedies within the union. We think the allegations in the bill with respect to the plaintiff's prosecution of his remedies within the union are adequate to be good against demurrer.

284, who were hostile to him. In sending, however, the letter returning the plaintiff's payment received by them on June 2, they were acting in accordance with the common practice of the local. The plaintiff had been sick for a year prior to his suspension. His record of dues payments had been poor and, for some time, he had been paying dues on the last, or nearly the last, day on which the union, by its custom, was willing to receive them.

The master also found that, in the course of the appeals taken by the plaintiff, there was correspondence between the plaintiff and I. B. E. W. This correspondence was attached to his report. On August 19, 1953, the I. B. E. W. president replied to a letter from the plaintiff "concerning the arrearage in your dues which occurred because of your failure to make payment *within the three months ending May 31, 1953*" (emphasis supplied), saying that "there is no constitutional authority . . . which can require dues receipts to be written after the three month period has expired." On December 24, 1953, the secretary of the I. B. E. W. executive council notified the plaintiff of the council's action on his appeal referring to the plaintiff's having gone "one day beyond the deadline in paying his dues."[3] The master, however, also expressly found (a) that no "evidence was introduced . . . whether . . . the International was aware of the practice in the local union of allowing an extra thirty days for payment of dues, except as it may have become aware" of the practice because of its correspondence with the plaintiff and from the records

---

[3] The whole report of the action of the council reads as follows: "Francis L. McDermott went one day beyond the deadline in paying his dues to Local Union 284, Pittsfield, Massachusetts. May 30, 1953 (Decoration Day) was a holiday. The Post Office was closed. Next day (Sunday) it was closed. Next day (Monday, June 1) McDermott obtained a postal money order for his dues and mailed it to the Local's Financial Secretary. The money order was returned to him. He was suspended and lost his continuous standing. Our Constitution reads: 'Any member indebted to his L. U. for three month's dues . . . shall stand suspended, and the L. U. may refuse to accept dues from any member who is indebted to it.' (Art. XXIII, Sec. 3.) Such cases as this are most distasteful to the Executive Council. For we have no authority to extend even one day's grace. And, as the International President's decision points out, 'There is no constitutional authority granted which can require dues receipts to be written after the three month period has expired unless the member desires to reinstate.' The appeal must be denied."

forwarded to I. B. E. W. by Local 284 which "were complete enough so that, if analyzed, they would have revealed the local union practice," and (b) "that there was no evidence that I. B. E. W. had actual knowledge of the custom of the local to accept the postmark date as the payment date . . . unless . . . the knowledge of the local union financial secretary may be imputed to . . . I. B. E. W."

The plaintiff's contention that the payment on June 1 of his dues for March was seasonable rested on the fact that May 31 was a Sunday and relied upon the operation of G. L. c. 4, § 9, which provides that when "the last day for the performance of any act, including the making of any payment . . . falls on Sunday . . . the act may . . . be performed on the next . . . business day." The master, however, construed the provisions of the union's constitution and local by-laws as making May 1, and not May 31, the last date on which a payment of the March dues would avoid a suspension. The master concluded that the plaintiff "was properly suspended . . . for nonpayment of dues and that . . . [he] is not entitled to reinstatement since he failed to comply with the requirements of the constitution and by-laws" in that respect.

As an alternative finding, in case he was wrong in his construction of the I. B. E. W. constitution, and Sunday, May 31, was in fact the last day for payment without suspension, the master found that the payment made by the plaintiff was "proper and on time," and "that the suspension . . . was improper." The master also found that "the suspension of the . . . [plaintiff] made it extremely difficult, if not impossible, for . . . [him] to obtain work as an electrician." The master's report purports to set forth on various bases the amount of damages to which the plaintiff would be entitled if he was entitled to damages at all.

The master's report was confirmed by interlocutory decree. A final decree was entered dismissing the bill. The plaintiff has appealed from each decree.

1. The defendants have filed a motion to dismiss the appeals because they contend that the order for preparation

of the papers on the appeals was not given seasonably. The order was in fact given on May 19, 1958, in advance of the date (May 21, 1958) when the clerk notified the judge and the parties that the time for filing designations had expired, and, of course, well before the expiration of thirty days from such notice or any earlier approval of the record as designated. See Rule 2 (F), as amended, of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 694, 332 Mass. 791. See also *State Realty Co. of Boston, Inc.* v. *MacNeil Bros. Co.* 334 Mass. 294, 297. The order was seasonable and the fact that it was given before the date when it need be given does not render it invalid. See *Sherrer* v. *Sherrer,* 320 Mass. 351, 354. See also *Tanzilli* v. *Casassa,* 324 Mass. 113, 115. The motion to dismiss the appeal must be denied.

2. *International Assn. of Machinists* v. *Gonzales,* 356 U. S. 617, 621–623, establishes that this suit in equity may be maintained for restoration of the plaintiff's membership and for damages, notwithstanding the labor management relations act of 1947, as amended; 29 U. S. C. (1952) §§ 141–188. The basis of seeking relief in the present case is of the same character as in the *Gonzales* case (see pp. 621–622), viz. alleged "breach of a contract governing the relations between . . . [the plaintiff] and his unions." The principal question for our decision is whether the plaintiff tendered his March, 1953, dues seasonably under the constitution and by-laws.

3. As permitted by art. XX, § 1, of the constitution, art. X, § 4, of the by-laws of Local 284 provides that dues shall be payable to Local 284 monthly in advance (see footnote 1, *supra*). Article XXIII, § 3, of the constitution provides for suspension of a member "indebted . . . for three months' dues." Article XXIV, § 1, however, refers to the rights to reinstatement possessed by anyone "suspended for being in arrears for three months."

The master interpreted these provisions in the aggregate as requiring that dues be paid "in advance, that on failure to make . . . payment in advance the . . . member would

'stand suspended' as soon as he was indebted for three months' dues," and that, because dues were payable in advance "on, for example, March 1, a member was indebted for one month's dues, on April 1 for two months' dues, and on May 1 for three months' dues."

If art. XXIII, § 3, stood alone, it would seem plain that the master was correct and that a debt would arise for dues payable in advance not later than midnight of the first day of the period for which the payment was made, and that at midnight on May 1, 1953, this plaintiff became indebted for three months' dues. See *Smith* v. *Shepard*, 15 Pick. 147, 150 (rent payable quarterly in advance payable at any time during first day of quarter); *Highland Trust Co.* v. *Slotnick*, 289 Mass. 119, 121 (rent.) See also *Rowe* v. *Williams*, 97 Mass. 163, 165.

The plaintiff argues, however, that a person would not be "in arrears for three months" under art. XXIV, § 1 (which refers to one who has been suspended under art. XXIII, § 3), until the expiration of three months after the first day of the dues period. If art. XXIII, § 3, must be read with, and controlled by, art. XXIV, § 1, there would be some force in the plaintiff's contention. Article XXIII, § 3, of course, is the rule which directly governs the matter of suspension, and under this provision the ground for suspension is being "*indebted . . .* for three months' dues" (emphasis supplied).

The plaintiff in effect argues that the language of art. XXIV, § 1, should control the interpretation of art. XXIII, § 3, with the consequence that suspension of a union member cannot take place until he has been in arrears in paying an instalment of dues for three months. It is said that to construe the provisions otherwise would lead to an absurd result in any union where dues are payable quarterly in advance. A union member required to pay dues quarterly in advance would become (see the rent cases already cited) "indebted" for three months' dues by midnight on the first day of the quarter. The plaintiff suggests that a strict application of art. XXIII, § 3, would mean that the member

then would become automatically suspended, and points out that the framers of the constitution can hardly have intended such a result. See *Berkal* v. *M. DeMatteo Constr. Co.* 327 Mass. 329, 333; *Botaish* v. *Romanos, ante,* 75, 78. The construction of those provisions adopted by the master would seem, indeed, to have the strange consequence[4] mentioned by the plaintiff in local unions, if there are any, where dues are payable quarterly in advance.

The plaintiff also contends that, in construing the applicable provisions of the constitution of I. B. E. W., the practical construction put upon the supposedly ambiguous provisions by the union itself must be given weight. See *Cetrone* v. *Paul Livoli, Inc.* 337 Mass. 607, 609.

Weighing, however, all the considerations mentioned by the plaintiff, we think that there is no such ambiguity in arts. XXIII, § 3, and XXIV, § 1, as will permit us to resort to the parties' custom as an aid to construction. The meaning of art. XXIII, § 3, seems to us plain and we view it as the controlling section rather than art. XXIV, § 1.

Even if resort were to be had to the defendants' construction of these articles in actual practice, the existence of any such construction for any substantial time, so far as I. B. E. W. is concerned, is far from clear. We are here construing provisions of a constitution plainly meant to control the practices of all local unions and not merely the practices of Local 284. We think that uniformity of interpretation was intended and that the meaning of the provisions cannot be affected by a custom not proved to have extended beyond Local 284. We reach this conclusion despite the fact that the by-laws of Local 284 incorporated the provisions of I. B. E. W.'s constitution by reference (see footnote 1, *supra*). The correspondence already mentioned between I. B. E. W. and the plaintiff, which the master attached to his report, indicates that I. B. E. W.

---

[4] The defendants suggest that, even in a local which required dues to be paid quarterly in advance, a member would not be indebted for any particular month's dues until the first day of that month. This suggestion does not seem valid, for, under the rent cases already cited, an indebtedness for three months' dues would exist at the end of the first day of the quarter.

officers accepted the view of Local 284 that the plaintiff would not have been suspended if he had paid by letter dated May 31. This, however, falls short of showing that I. B. E. W. had theretofore regularly construed the constitution in practice in a manner consistent with the custom adopted by Local 284. On this record, the subsidiary facts shown or found by the master do not require a finding that the constitution has been construed consistently by I. B. E. W. in the manner in which it was interpreted by Local 284.

Little weight can be given to the fact that in local unions where dues are payable quarterly in advance, art. XXIII, § 3, if strictly applied, reaches a somewhat absurd result. It may well be that few, if any, local unions require quarterly dues payments in advance. If this is so, it may explain the failure to notice the absurdity until the ingenuity of the plaintiff's counsel brought it to light in the present case. Whatever may be the case, this absurdity cannot be permitted to affect the plain meaning of art. XXIII, § 3, as applied to dues payable monthly in advance.

4. On this record, it cannot be ruled that I. B. E. W. waived strict compliance with its constitution. Such power does not exist in the officers or even in the membership of an unincorporated association with respect to basic matters affecting the existence of the association. *McFadden* v. *Murphy,* 149 Mass. 341, 343. *Kane* v. *Shields,* 167 Mass. 392, 396. *Hill* v. *Rauhan Aarre,* 200 Mass. 438, 439. *Hamaty* v. *St. George Ladies Soc.* 280 Mass. 58, 67. *Bacon* v. *Paradise,* 318 Mass. 649, 654. This principle has been held to be controlling in matters involving the relations of membership corporations to their members. *Societa Unione Fratellanza Italiana* v. *Leyden,* 225 Mass. 540, 545–547. The case last cited (at p. 547) distinguished *Crowley* v. *A. O. H. Widows' & Orphans' Fund,* 222 Mass. 228, on the ground, not clearly justified by the language of the *Crowley* case, that in the *Crowley* case there was evidence that the governing by-law had been abandoned. The *Leyden* decision also distinguishes cases of waiver of the provisions of mere

contracts between associations and their members, not embodied in a constitution or by-laws. See e.g. *Rice* v. *New England Mut. Aid Soc.* 146 Mass. 248. Cf. *Kubilius* v. *Hawes Unitarian Congregational Church*, 322 Mass. 638, 644–645. On the facts of the present case the *Leyden* case is controlling and there was no power in the officers of Local 284 to waive the provisions of the constitution of I. B. E. W. and their failure to observe it does not give rise to an estoppel of the defendants to rely on these provisions.

*Decrees affirmed.*