Joseph A. Gavagan, J.
Plaintiff corporation, operating a restaurant, seeks a temporary injunction to restrain the defendant unions from continuing the alleged unlawful picketing, which has proceeded in front of plaintiff’s premises for more than *266 two years. The unions cross-move to dismiss the complaint on the ground that the court does not have jurisdiction of the subject of the action and on the further ground that there is a prior action pending in this court for the same relief.
The present action, unlike the prior action, is predicated upon the continuation of the picketing after the declination by the State Labor Relations Board to take jurisdiction of the controversies. The State board found that the plaintiff was engaged in interstate commerce and that its labor relations were accordingly within the jurisdiction of the National Labor Relations Board.
The decisive question presented on this application is whether, under the facts here, “ Congress, by vesting in the National Labor Relations Board jurisdiction over labor matters affecting-interstate commerce, has completely displaced state power to deal with such matters ” (Guss v. Utah Labor Bd., 353U. S. 1, 2-3).
Although the course of the controversies between the parties is tortuous, the material facts are largely undisputed. On January 5, 1957, plaintiff discharged one of its kitchen employees allegedly for union activity in behalf of the defendant Local 89, which has a membership of some 9,000 kitchen employees working in New York City restaurants. A few days later, Local 89 claiming a majority of plaintiff’s kitchen employees, established a picket line in front of plaintiff’s premises. About the same time, the defendant Local 1, which has a membership of some 12,000 dining room employees working in New York City restaurants, claimed it represented a majority of plaintiff’s dining room employees.
On January 9, 1957, Local 89 filed a charge with the State Labor Relations Board based on plaintiff’s alleged failure to bargain collectively. Two weeks later Local 1 filed a charge with the State board which also alleged that plaintiff was engaged in unfair labor practices. On February 6, 1957, the plaintiff filed two petitions with the State board: one alleging that a dispute had arisen with Local 89 concerning the representation of plaintiff’s kitchen employees and the other alleging that a dispute had arisen with Local 1 concerning the representation of plaintiff’s dining room employees. In each petition the State board was requested to certify the representative, if any, designated by the employees involved. Shortly thereafter, each union filed amended charges and based on such charges the State board issued its complaint alleging in substance that the plaintiff (as respondent in the administrative proceedings) had engaged in unfair labor practices, par *267 ticularly the failure to bargain collectively with each union and the discriminatory discharges of employees for union activities. The various proceedings before the State board were consolidated and hearings were held before a trial examiner on 24 days from May 2 to November 6, 1957.
In the meantime, the plaintiff had instituted the prior action and applied to this court for a temporary injunction to enjoin the allegedly unlawful picketing pending the certification proceedings before the State board. -On that application, too, the unions cross-moved to dismiss the complaint. Special Term enjoined the picketing pending trial. On appeal, the Appellate Division held that ‘ ‘ it was possible for the plaintiff to deal with the defendants without being exposed to the hazards of a charge for unlawful labor practices, which the plaintiff in the Goodwins case [303 N. Y. 300] was unable to do”, and modified the order of Special Term to the extent of striking the injunctive provision (3 A D 2d 233, 236).
A subsequent application to the court for a temporary injunction against the picketing of plaintiff’s premises was settled by stipulation limiting, among other things, the number of pickets.
On September 30, 1957, in the proceedings before the State board, the plaintiff filed a second amended answer which, for the first time, alleged that the plaintiff was engaged in interstate commerce, that the Federal board had sole and exclusive jurisdiction of its labor relations and that the State board was without jurisdiction.
In January, 1958, more than one year after the charges were filed with the State board, the trial examiner issued an intermediate report in which he found that the board lacked jurisdiction of plaintiff’s labor relations and recommended dismissal of the complaint. Exceptions to the trial examiner’s intermediate report were filed by the State board’s litigation attorney, as well as by the unions. In November, 1958, there were two significant developments which materially changed the situation in the opinion of the board. The first was a decision by the national board holding that it would assert jurisdiction over all retail enterprises engaged in interstate commerce which did a gross volume of business of at least $500,000 annually (Carolina Supplies & Cement Co., 122 N. L. R. B. No. 17). The second was the decision in Hotel Employees v. Leedom (358 U. S. 99), where the Supreme Court held that the Federal board could not refuse to exercise jurisdiction over the hotel industry as a class. Based on those decisions the State board found that it lacked jurisdiction since the restaurant business was a *268 part of the hotel industry. On January 28, 1959, more than two years after charges were filed before the State board, it entered an order dismissing the complaint against the plaintiff and discontinuing all proceedings between the parties on the ground that the plaintiff was engaged in interstate commerce, that the Federal board would assert jurisdiction over plaintiff’s labor relations and that the State board was without jurisdiction.
On such facts, must this court, like the State board, defer to the Federal board and decline jurisdiction? In Weber v. Anheuser-Busch Inc. (348 U. S. 468, 481) the Supreme Court scrutinized the subject matter of the action to determine whether it was “ the concern exclusively of the federal Board and withdrawn from the State ” and said (pp. 480-481): “ By the TaftHartley Act, Congress did not exhaust the full sweep of legislative power over industrial relations given by the Commerce Clause. Congress formulated a code whereby it outlawed some aspects of labor activities and left others free for the operation of the economic forces. As to both categories, the areas that had been pre-empted by federal authority and thereby withdrawn from state power are not susceptible of delimitation by fixed metes and hounds. Obvious conflict, actual or potential, leads to easy judicial exclusions of state action. Such was the situation in Garner v. Teamsters Union [346 U. S. 485] supra. But as the opinion in that case recalled, the Labor Management Relations Act ‘ leaves much to the states, though Congress has refrained from telling us how much. ’ 346 U. S., at 488. This penumbral area can be rendered progressively clear only by the course of litigation.”
The Supreme Court, searching the twilight zone where the States are not barred from exercising their authority, has sustained State court injunctions against: mass picketing, threats of bodily injury and property damage to employees, obstruction of streets, public roads, passageways to a factory, and the picketing of employees’ homes (Youngdahl v. Rainfair, 355 U. S. 131; Allen-Bradley Local v. Board, 315 U. S. 740); recurrent, unannounced work stoppages (Automobile Workers v. Wisconsin Bd., 336 U. S. 245); enforcement of a maintenance-of-membership clause in a contract between employer and union (Algoma Plywood Co. v. Wisconsin Bd., 336 U. S. 301).
Within this general area, the Court of Appeals has recently enunciated the resolute policy to be followed by the courts of this State: “we do not think we should be quick to announce a lack of State jurisdiction * * * If we rule against jurisdiction and we are wrong in so ruling, the unsuccessful litigant may well be irreparably harmed. We are of the mind that *269 any doubt should be resolved in favor of jurisdiction, leaving it to the Supreme Court to finally resolve the matter” (Pleasant Val. Packing Co. v. Talarico, 5 N Y 2d 40, 47).
Obviously, the prescribed policy cannot apply where State authority has been specifically pre-empted; it can only apply where the exclusiveness of Federal jurisdiction is in doubt. “ [I]f the National Labor Relations Board is vested with power to entertain the plaintiff’s grievance against the defendant union[s], our courts are without jurisdiction to act. If the board is not vested with such power State action is still permissible (Garner v. Teamsters Union, 346 U. S. 485).” (Pleasant Val. Packing Co. v. Talarico, supra, p. 45.)
Before turning to inquire whether the plaintiff’s grievances against the defendant unions are within the jurisdiction of the national board, it must be noted that the unions concede that they are barred from filing charges against the plaintiff by the six-month limitation of subdivision (b) of section 10 of the Taft-Hartley Act (U. S. Code, tit. 29, § 160). Subdivision (b) of section 10 provides, in part, “ That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board ”. The officers of the defendant unions, in their joint affidavit, speaking of the same actions by the plaintiff which were the subject of the charges before the State board, say: “ Unfortunately, owing to the lapse of time during which the matter was pending before the New York State Labor Relations Board, defendant may no longer file the charges before the National Labor Relations Board.”
Although mindful of the decisions interpreting “ the Proviso in section 10 (b) of the Act as creating a statute of limitations rather than a jurisdictional limitation ” (National Labor Relations Bd. v. Nettleton Co., 241 F. 2d 130, 133; National Labor Relations Bd. v. Itasca Cotton Mfg. Co., 179 F. 2d 504), I find that the great weight of authority holds that there is a jurisdictional bar to any proceeding before the national board based on an unfair labor practice occurring more than six months prior to the filing of a charge with the board. (Superior Engraving Co. v. National Labor Relations Bd., 183 F. 2d 783, cert, denied 340 U. S. 930; National Labor Relations Bd. v. Die & Tool Makers Lodge, 231 F. 2d 298; Indiana Metal Prods. Corp. v. National Labor Relations Bd., 202 F. 2d 613; American Federation of Grain Millers v. National Labor Relations Bd., 197 F. 2d 451; National Labor Relations Bd. v. Childs Co., 195 F. 2d 617; National Labor Relations Bd. v. Pennwoven, Inc., 194 F. 2d 521; Joanna Cotton Mills Co. v. National Labor Relations Bd., *270 176 F. 2d 749; Hull v. Sheet Metal Workers Int. Assn., 161 F. Supp. 161; National Labor Relations Bd. v. Hopwood Retinning Co., 98 F. 2d 97; see National Licorice Co. v. Labor Bd., 309 U. S. 350.) The cases cited are also authority for the exercise of injunctive powers by the courts to restrain the Federal board from issuing complaints founded on stale charges. The Federal board, itself, has ruled that it is without jurisdiction to issue a complaint where the charge is invalid under the six-month proviso. (Mid-States Steel & Wire Co., 112 N. L. R. B. 800; New York Shipping Assn., 112 N. L. R. B. 1047; Knickerbocker Mfg. Co., 109 N. L. R. B. 1195.)
Clearly, therefore, the national board would have no jurisdiction to issue a complaint in favor of the defendant unions where no charge has as yet been filed with the board and more than six months have elapsed since the occurrence of the alleged unfair labor practices by the plaintiff. In fact, the unions can obtain no relief on their barred claims in any tribunal (Anson v. Hiram Walker & Sons, 148 F. Supp. 745, affd. 248 F. 2d 380).
The unions contend, however, that the complete bar against them does not relieve the plaintiff from invoking the jurisdiction of the Federal board under section 8 (subd. [b], pars. [1], [2]) of the Taft-Hartley Act. In the defendants’ view, the plaintiff’s complaint is grounded upon the claim that the unions are attempting to compel the plaintiff to recognize them as the collective bargaining representatives of its employees and to enter into collective bargaining agreements under circumstances in which such recognition would have the effect of interfering with the employees’ right to select their own collective bargaining representatives. My view of plaintiff’s complaint is that it seeks to enjoin permanently the picketing of its premises by the defendant unions on the ground that such picketing continues for the sole purpose of enforcing stale union claims outlawed in every forum. Such a view raises considerable doubt whether plaintiff’s complaint alleges an unfair labor practice under section 8 (subd. [b], pars. [1], [2]) of the act (TI. S. Code, tit. 29, § 158, subd. [b], pars. [1], [2]). Any doubt, following the directive announced in Pleasant Val. Packing Co. v. Talarico (5 N Y 2d 40, supra) should be resolved to favor retention of jurisdiction by our courts.
Even if I were to assume arguendo that the plaintiff’s grievance falls within the act, I would be remiss, under the circumstances here, to take the easy course and require the plaintiff to proceed in the first instance before the Federal board. To do so, suggests that the Federal board would have the power *271 to allow or disallow relief to the plaintiff after consideration of the unions ’ stale claims; or, in other words, would allow the board to do indirectly what it could not do directly.
To give effect to the contentions of the defendant unions would mean that they may perpetually picket plaintiff’s premises unless and until the plaintiff invokes the jurisdiction of the Federal board for an election to designate collective bargaining representatives, including the defendant unions, if any. Obviously, such an election, if ordered by the Federal board based on plaintiff’s present grievance, would include the right to vote for the defendant unions and, silent as a spectre on each ballot, would be the unions’ time-barred and unenforcible claim that they represented a majority of plaintiff’s employees when the picketing began in January, 1957. Equity will not require the performance of a futile act.
For similar reasons, I cannot find that there is, at present, an actual labor dispute within the intendment of section 876-a of the Civil Practice Act.
Under the circumstances at bar, to permit the picketing to continue will cause the plaintiff irreparable injury.
The motion for a temporary injunction is accordingly granted. The cross motion is denied.
Settle order providing for an early trial if the defendants be bo advised.