Thomas A. Aurelio, J.
The defendant The Great Atlantic and Pacific Tea Company moves for dismissal of the complaint pursuant to rule 107 of the Rules of Civil Practice, upon the ground that the court has not jurisdiction of the subject matter. By separate motion, the defendants Local Union Ño. 400 and Local Union No. 489 move for dismissal of the complaint upon the ground that the court lacks jurisdiction of the subject matter, and upon the further ground that there is an existing judgment determining the same cause between the parties.
It is alleged that for four years prior to December 11, 1953 plaintiff had been an employee of the defendant A & P in its store at 2008 Broadway, in the City of New York. Prior to October 11,1952 the plaintiff and other employees of the defendant A & P had not been members of a union. Defendants are charged with conspiracy. Pursuant thereto, and in October, 1952, they induced numerous employees to sign and mark certain cards by falsely and fraudulently stating to the employees that by so signing they were helping certain other employees to obtain a better contract with A & P, whereas, without so informing the employees, the defendants intended to and did use the signing and marking of the cards to make a false assertion that they had the right to represent the employees who signed the cards in all labor matters. In furtherance of such conspiracy, it is alleged upon information and belief, that the defendants forged the signatures of employees of the defendant A & P on such union cards for the purpose of manifesting that the unions represented a majority of the employees, and by such fraud gave to the unions the apparent right to represent the employees of the defendant A & P in labor matters.
With knowledge that they did not so represent a majority of its employees, and wishing to avoid a strike threatened by the unions, the defendant A & P, pursuant to the conspiracy, entered into a written agreement with the unions, which was mutually beneficial financially to the defendant A & P and to the unions but detrimental and disadvantageous financially and otherwise to the plaintiff and other employees.
The written agreement was for a term of two years but the defendants simultaneously entered into an oral agreement extending the coverage to a five-year period, the terms of such oral agreement, however, being concealed by the defendants and were not revealed to the employees. Such agreement was entered into secretly and fraudulently and without the consent or knowledge of the plaintiff and other employees, in violation of the provisions of the Labor-Management Relations Act (U. S. Code, tit. 29, § 141 et seq.). The alleged benefit to the *100 defendant A & P was a saving to that defendant of millions of dollars in wages and benefits which should, and would have been paid to its employees, and the benefit to the unions was the increase in the number of employees paying dues to them. Further, as part of the design and conspiracy, the agreements provided that the employees would be required to work more hours and receive less pay and other benefits than employees in similar occupations in other markets, to the advantage of the defendants and to the disadvantage of plaintiff and other employees. As part of the conspiracy the agreement contained a provision requiring all employees to join and pay dues to the defendant unions as a condition of employment. It is then alleged that the agreements were illegal and fraudulent and that the plaintiff refused to join the defendant unions and to pay dues to them. In furtherance of the conspiracy, plaintiff’s employment was terminated by reason of his failure to join the unions and to pay dues to them. As a result thereof and to the present time plaintiff has been deprived of his employment, has been blacklisted by the defendants in obtaining similar employment, has been deprived of regular income since his discharge, and has been caused to suffer great distress of mind and body and impaired health.
‘ ‘ The statutory implications concerning what has been taken from the States and what has been left to them are of a Delphic nature, to be translated into concreteness by the process of litigating elucidation” (Machinists v. Gonzales, 356 U. S. 617, 619). The same perplexing problem was reached in Pleasant Val. Paching Co. v. Talarico (5 N Y 2d 40, 47) where the court stated: “In the light of the foregoing statement emanating from the Supreme Court [elucidating litigation], we do not think we should be quick to announce a lack of State jurisdiction in this general area [unlawful picketing]. If we rule against jurisdiction and we are wrong on so ruling, the unsuccessful litigant may well be irreparably harmed. We are of the mind that any doubt should be resolved in favor of jurisdiction, leaving it to the Supreme Court to finally resolve the matter.” Thereafter the United States Supreme Court ruled in San Diego Unions v. Garmon (359 U. S. 236, 243-244): “ However, due regard for the presuppositions of our embracing federal system, including the principle of diffusion of power not as a matter of doctrinaire localism but as a promoter of democracy, has required us not to find withdrawal from the States of power to regulate where the activity regulated was a merely peripheral concern of the Labor Management Eelations Act. See International Assn, of Machinists v. Gonzales, 356 U S 617. Or *101 where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act.” In the same case, at page 245, the court ruled: ‘1 When an activity is arguably subject to § 7 or § 8 of the [National Labor Relations] Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted. ’ ’
While the facts are not so explicitly set forth in the pleading and affidavits, it appears as a matter of public record that the alleged illegal and wrongful activities of the defendants were exposed in the hearings before the Senate Committee on Improper Activities in the labor and management fields in May, 1958. Consideration of the pleading and of the applications addressed thereto must be in the light of that fact. Were the facts known to the plaintiffs at the time, the matters could possibly have been presented to the National Labor Relations Board. Not alone has the time limitation for consideration of any unfair labor practices in relation thereto long since elapsed, but the question remains whether a tort is not here set forth involving conduct touching interests so deeply rooted in local feeling and responsibility as to invoke the proper interest and concern of State jurisdiction. In Newsday v. Feldman (8 AD 2d 978, 979) it was held that “ Commission of any crime, whether it constitutes assault, battery, malicious mischief or libel, may always be enjoined by State courts, even when the conduct is sought to be cloaked in the guise of picketing for the purpose of promoting the lawful interests of a labor union in a labor dispute.” The alleged guise here used was the pretended regularity and honesty of labor and management activity cloaking a scheme involving forgery and other activity for the purpose, as plaintiff claims, of producing his discharge, with the indicated results and damage by reason of the fact ostensibly that the plaintiff was a trouble maker. As stated in Machinists v. Gonzales (356 U. S. 617, 621, supra): “ Although, if the union’s conduct constituted an unfair labor practice, the Board might possibly have been empowered to award back pay, in no event could it mulct in damages for mental or physical suffering. And the possibility of partial relief from the Board does not, in such a case as is here presented, deprive a party of available state remedies for all damages suffered ’ ’. See, also, Automobile Workers v. Russell (356 U. S. 634), involving a suit by a union member against a union for the tort of wrongful inter *102 ference with a lawful occupation by threats; United Workers v. Laburnum Corp. (347 U. S. 656), involving a common-law tort action between a union and an employer for damages based upon tortious conduct, which also constituted unfair labor practice.
“ State jurisdiction has prevailed in these situations because the compelling state interest * * * in the maintenance of domestic peace is not overridden in the absence of clearly expressed congressional direction” (San Diego Unions v. Garmon, 359 U. S. 236, 247, supra). While a jurisdictional bar exists with respect to any proceeding before the National Labor Relations Board based on unfair labor practices occurring more than six months prior to the filing of a charge with the board (Superior Engraving Co. v. National Labor Rel. Bd., 183 F. 2d 783, cert, den., 340 U. S. 930; Stork Restaurant v. Fernandez, 16 Misc 2d 265, mod. on other grounds, 8 A D 2d 38), defendant urges that despite the bar of such remedy, the substance of the complaint and the charges thereof may not be revived by litigation before other jurisdiction. This would be a valid argument if the matter before the court involved an unfair labor practice only, without more. The court reaches the conclusion, however, that the tort here relied on is not even arguably within the compass of section 7 or section 8 of the Labor Management Relations Act.
Finally, the matter which was brought before the N. L. R. B. in 1953 cannot furnish basis for a plea of prior adjudication. The motions are denied.