Wilson P. LOCKRIDGE, Plaintiff-Appellant,

v.

AMALGAMATED ASSOCIATION OF STREET ELECTRIC RAILWAY AND MOTOR COACH EMPLOYEES OF AMERICA, an International Labor Union; and Northwest Division 1055 of the Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America, a Regional Division of the International Union, Defendants-Respondents.

No. 9040.

Supreme Court of Idaho.

March 23, 1962.

202

Anderson, Kaufman & Anderson, Boise, for appellant.

McClenahan & Greenfield, Boise, Bailey, Lezak, Swink & Gates, Portland, Or., Bernard Cushman, Washington, D. C., for respondents.

TAYLOR, Justice.

This action was brought by plaintiff (appellant) to recover judgment for compensatory and punitive damages against defendant (respondent) labor union for wrongful suspension of plaintiff's membership. Plaintiff alleges that he was a member of the union from May, 1943, to about November 2, 1959, during which time he was employed by Greyhound Corporation as a bus driver; that his suspension from membership was based upon the contention that

**204**

plaintiff was in arrears in the payment of his dues, contrary to the constitution and laws of the union; that the union notified the Greyhound Corporation that plaintiff was no longer a member and requested the corporation to discharge him which the corporation did on or about November 2, 1959, pursuant to the request and its contract with the union; and that suspension from membership was not in accord with the constitution and laws of the union, and was wrongful and without lawful basis. The complaint contains two counts in tort and one for breach of contract.

Upon motion of the defendant, the action was dismissed by the district court upon the sole ground that the complaint charged an unfair labor practice, within the exclusive jurisdiction of the National Labor Relations Board, and that the district court had no jurisdiction of the subject matter.

Plaintiff prosecutes this appeal from the judgment of dismissal.

Unincorporated associations, including labor unions, are recognized as legal entities under the laws of this state. I.C. §§ 44–701, 18–5201, 72–1010, 63–3002, 30–101(14).

█ The constitution and bylaws of the defendant union and the granting and acceptance of membership, constituted a contract between the plaintiff and defendant. 7 C.J.S. Associations § 11b.

The question presented is whether the cause is one preempted by the Labor Man-agement Relations Act of 1947. Section 7 of the act (U.S.C.A., Title 29, § 157) declares the right of employees to organize and engage in collective bargaining. Section 8 (U.S.C.A., Title 29, § 158) defines unfair labor practices on the part of both employer and employee. This section in part provides:

"(b) It shall be an unfair labor practice for a labor organization or its agents—

"(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title: *Provided*, That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein; or (B) an employer in the selection of his representatives for the purposes of collective bargaining or the adjustment of grievances;

"(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) of this section or to discriminate against an employee with respect to whom membership in such orgainzation has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership;"

The opinion in International Association of Machinists v. Gonzales, 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed.2d 1018, was rendered in an action brought in the Superior Court of California by an expelled union member, for reinstatement and damages. The California court gave judgment for the relief sought. The U. S. Supreme Court noted that to cause an employer to discriminate against an employee on some ground other than denial or termination of membership for failure to pay dues, might constitute an unfair labor practice, under § 8(b) (2). With respect to the relationship between the union and the member, the court said:

"* * * But the protection of union members in their rights as members from arbitrary conduct by unions and union officers has not been undertaken by federal law, and indeed the assertion of any such power has been expressly denied. The proviso to § 8(b) (1) of the Act states that 'this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein. * * *' 61 Stat. 141, 29 U.S.C. § 158 (b) (1), 29 U.S.C.A. § 158 (b) (1). The present controversy is precisely one that gives legal efficacy under state law to the rules prescribed by a labor organization for 'retention of membership therein.' Thus, to preclude a state

court from exerting its traditional jurisdiction to determine and enforce the rights of union membership would in many cases leave an unjustly ousted member without remedy for the restoration of his important union rights. Such a drastic result, on the remote possibility of some entanglement with the Board's enforcement of the national policy, would require a more compelling indication of congressional will than can be found in the interstices of the Taft-Hartley Act. See United Construction Workers, etc. v. Laburnum Const. Corp., 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025.

"Although petitioners do not claim that the state court lacked jurisdiction to order respondent's reinstatement, they do contend that it was without power to fill out this remedy by an award of damages for loss of wages and suffering resulting from the breach of contract. No radiation of the Taft-Hartley Act requires us thus to mutilate the comprehensive relief of equity and reach such an incongruous adjustment of federal-state relations touching the regulation of labor. The National Labor Relations Board could not have given respondent the relief that California gave him according to its local law of contracts and damages. Although if the unions' conduct consti-

**206**

tuted an unfair labor practice the Board might possibly have been empowered to award back pay, in no event could it mulct in damages for mental or physical suffering. And the possibility of partial relief from the Board does not, in such a case as is here presented, deprive a party of available state remedies for all damages suffered. See International Union, United Automobile [Aircraft and Agr. Implement] Workers [of America] v. Russell, 356 U.S. 634, 78 S.Ct. 932 [2 L.Ed.2d 1030]." International Ass'n of Machinists v. Gonzales, 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed.2d 1018, at 1021 and 1022.

Defendant cites Garner v. Teamsters, Chauffeurs and Helpers Local Union, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228. Distinguishing that case, the court, in United Const. Workers, etc. v. Laburnum Const. Corp., 347 U.S. 656, 74 S.Ct. 833, 837, 98 L.Ed. 1025, at 1031, said:

" * * * In the Garner case, Congress had provided a federal administrative remedy, supplemented by judicial procedure for its enforcement, with which the state injunctive procedure conflicted. Here Congress has neither provided nor suggested any substitute for the traditional state court procedure for collecting damages for injuries caused by tortious conduct. For us to cut off the injured respondent from this

right of recovery will deprive it of its property without recourse or compensation. To do so will, in effect, grant petitioners immunity from liability for their tortious conduct."

Defendant also relies upon San Diego Bldg. Trades Council, etc. v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775. It is contended that the Garmon case reaffirms the Garner case and modifies and supersedes the Gonzales decision as to preemption. The Court split 5–4 as to the applicable ground for the preemption affirmed in the Garmon case. The majority opinion was written by Justice Frankfurter, also the author of the opinion in the Gonzales case.

In the Garmon case the unions sought an agreement by the employer that the latter would retain in his employ only union members and those who applied for membership within thirty days. Upon refusal, the unions began peaceful picketing, claiming their purpose was to educate and persuade the workers. The employer obtained a judgment in the Superior Court of California for damages and enjoining the picketing on the ground that its purpose was to force the employer to execute the requested contract, contrary to California law. The California Supreme Court affirmed, noting that, since the National Labor Relations Board had refused to take jurisdiction of the controversy, the state courts had power over the dispute.

On the first appeal, the United States Supreme Court ruled that the refusal of the National Labor Relations Board to assert jurisdiction did not leave the state free to act, and remanded the cause for determination by the California court as to whether California law would support the judgment for damages. The California court vacated the injunction and affirmed the damage judgment.

On the second appeal (supra) the court said:

"When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted. [Ibid.] * * *

"To require the States to yield to the primary jurisdiction of the National Board does not ensure Board adjudication of the status of a disputed activity. If the Board decides, subject to appropriate federal judicial review, that conduct is protected by § 7, or prohibited by § 8, then the matter is at an end, and the States are ousted of all jurisdiction. Or, the Board may decide that an activity is neither protected nor prohibited, and thereby raise the question whether such activity may be regulated by the States. * * *

" * * * In the absence of the Board's clear determination that an activity is neither protected nor prohibited or of compelling precedent applied to essentially undisputed facts, it is not for this Court to decide whether such activities are subject to state jurisdiction. * * *

"In the light of these principles the case before us is clear. Since the National Labor Relations Board has not adjudicated the status of the conduct for which the State of California seeks to give a remedy in damages, and since such activity is arguably within the compass of § 7 or § 8 of the Act, the State's jurisdiction is displaced." San Diego Bldg. Trades Council, etc. v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775, at 783 and 784.

Thus, the Supreme Court reaches the conclusion that the Congress has delegated to the National Labor Relations Board the legislative function of determining national policy, even though the act itself purports to spell out such policy (U.S.C.A., Title 29, §§ 141, 151). And the court abdicates, in favor of the board, the judicial function of determining legislative intent. Being an agency also of the executive branch of the government, the board is thus clothed with complete power—to make, to interpret, and to enforce the law. The citizens of the states must be content with what relief the

board chooses to afford. Or, if the board refuses to act in any arguable area, citizens of the states must suffer torts and violations of contract rights without relief. Anent the effect of this decision on state jurisdiction, the four justices concurring in the result said:

"The Court's opinion in this case cuts deeply into the ability of States to furnish an effective remedy under their own laws for the redress of past non-violent tortious conduct which is not federally protected, but which may be deemed to be, or is, federally prohibited. Henceforth the States must withhold access to their courts until the National Labor Relations Board has determined that such unprotected conduct is not an unfair labor practice, a course which, because of unavoidable Board delays, may render state redress ineffective. And in instances in which the Board declines to exercise its jurisdiction, the States are entirely deprived of power to afford any relief. Moreover, since the reparation powers of the Board, as we observed in Russell, are narrowly circumscribed, those injured by nonviolent conduct will often go remediless even when the Board does accept jurisdiction." San Diego Bldg. Trades Council, etc. v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775, at 787 and 788.

Referring to the Gonzales case, Justice Frankfurter in the second Garmon case said:

"* * * However, due regard for the presuppositions of our embracing federal system, including the principle of diffusion of power not as a matter of doctrinaire localism but as a promoter of democracy, has required us not to find withdrawal from the States of power to regulate where the activity regulated was a merely peripheral concern of the Labor Management Relations Act. See International Ass'n of Machinists v. Gonzales, 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed.2d 1018." San Diego Bldg. Trades Council, etc. v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775, at 782.

Thus, even though the "penumbral area" may be broadened by the Garmon decision, the rule of the Gonzales case, applicable here, has not been supplanted.

In view of the unsettled state of the federal law, our course is clear. We must assert jurisdiction in every doubtful case, to the end that our citizens be not denied relief for wrongs "neither protected nor prohibited" nor "preempted" by federal law, or, more appropriately, by the National Labor Relations Board.

Morse v. Local Union No. 1058 Carpenters, etc., 78 Idaho 405, 304 P.2d 1097, is

not applicable here. In that case Morse, a member, brought action against the union for damages arising out of loss of employment due to refusal of the union to permit him to transfer from one local to another. The resulting discrimination did not result from a failure to pay dues. Moreover, the opinion in the Morse case was handed down more than a year before the decision of the Gonzales case, hence we did not have the benefit of that, and other later opinions of the federal courts in arriving at the conclusion reached in the Morse case.

 We hold that under the rule of the Gonzales case the district court had jurisdiction of this controversy, and that the Garmon case is not in point. Gainey v. Local 71, International Broth. of Teamsters, 252 N.C. 256, 113 S.E.2d 594; Barlow v. Roche (D.C.Mun.App.) 161 A.2d 58; Dempsey v. Great Atlantic & Pacific Tea Co., 24 Misc.2d 98, 197 N.Y.S.2d 744; Perko v. Local No. 207 of Intern. Ass'n of Bridge, etc., Workers, 171 Ohio St. 68, 167 N.E.2d 903; United Association of Journeymen, etc. v. Borden (Tex.) 328 S.W.2d 739; Green v. Folks, 27 Misc.2d 298, 208 N.Y.S. 2d 559. See also: Selles v. Local 174, etc., 50 Wash.2d 660, 314 P.2d 456, cert. denied, 356 U.S. 975, 78 S.Ct. 1134, 2 L.Ed.2d 1149, rehearing denied, 358 U.S. 860, 79 S.Ct. 14, 3 L.Ed.2d 95; Kuzma v. Millinery Workers Union Local No. 24, 27 N.J.Super. 579, 99 A.2d 833; McDermott v. Jamula, 338 Mass.

236, 154 N.E.2d 595; Cooperative Refinery Ass'n v. Williams, 185 Kan. 410, 345 P.2d 709.

The judgment of dismissal is reversed and the cause is remanded for further proceedings.

Costs to appellant.

SMITH, C. J., and KNUDSON, McQUADE and McFADDEN, JJ., concur.