Fairlawn Meats, Inc., Appellee, v. Amalgamated Meat Cutters and Butcher Workmen of North America, Local No. 427, AFL, et al., Appellants.

(No. 4519—Decided May 18, 1955.)

Mr. *Stanley Denlinger,* Mr. *Ray J. McGowan* and Mr. *Robert Sheck,* for appellee.
Messrs. *Smoot & Riemer,* for appellants.

Hunsicker, J. This is an appeal on questions of law and fact.

In this opinion, the appellee (plaintiff below) shall be designated as Fairlawn Meats, and the appellants (defendants below) shall be designated as the union. The cause in this court, by agreement of the parties, was heard on the transcript of testimony taken in the trial court, together with the exhibits there introduced.

Fairlawn Meats operates three stores for the sale of meats and related products, to both wholesale and retail customers. Approximately 50 persons are employed, a minority of whom were members of the union at the time of or during the occurrences which led to the controversy herein.

The union, through its responsible officers in this area, sought to organize the employees of Fairlawn Meats, but was unable to secure more than 18 members, although, at the time of the strike herein, there were less than 10 who actively interested themselves in the conduct of the strike.

After efforts to organize the employees failed, the management was approached with a request that it recognize the union as sole bargaining agent of the employees, that they sign a contract that would require that all of their employees join the union within 30 days, or, if they refused to do so, they would be discharged. Other provisions of the standard contract were proposed to the management, which, after many discussions, refused to enter into a contract with the union. The evidence discloses that there was no discrimination in the employment or discharge of members of the union, and that they could join or not join, so far as management was concerned.

The union, when Fairlawn Meats refused to sign the contract, then bannered each place of business. Most of the employees who were members of the union remained away from their jobs, although a few who first left their employment returned to work, and a few signed a statement of resignation from Fairlawn Meats.

At two of the stores, picketing was done by using land owned by, or under lease to, Fairlawn Meats; and, although the union officials were notified of this fact, picketing continued over such lands.

The evidence also showed that Mr. Ekers, the manager and principal owner of Fairlawn Meats, was followed by union officials when he went to some of the places where he purchased meat, and that, on one such instance, while at the place where he bought meat for resale, the air was let out of the tires of his automobile.

There is competent, credible evidence to show that, in order to enforce the demands of the union that Fairlawn Meats sign the standard contract requiring Fairlawn Meats to force the employees to join the union, or be discharged, at least two of the companies from whom meats were purchased for resale were threatened with imminent labor difficulties within their plants. As a result of these threats, such companies refused to sell any meat products to Fairlawn Meats.

Fairlawn Meats filed an action in the Court of Common Pleas, asking for both a temporary and a permanent injunction. The union denied that the state trial court had jurisdiction to entertain the action, and, without waiving its objection to juris-

diction, said that it was engaged in a bona fide labor dispute, denied that it engaged in any unfair labor practice, and asserted its right to picket the places of business of Fairlawn Meats. The cause is heard in this court *de novo* on the same pleadings filed in the trial court.

The first question that confronts this court is that concerning the jurisdiction of the state court to proceed in a determination of the issues herein.

The Congress of the United States, by the enactment of the National Labor Relations Act, intended to exercise the full scope of its authority to regulate unfair labor practices affecting interstate commerce. *Universal Car & Service Co. of Grand Rapids* v. *I. A. M. (AFL), Lodge 1573,* 27 Labor Cases, C. C. H., paragraph 68, 825.

"Affecting commerce" is defined in the Labor Management Relations Act. See Title 29, Section 152 (7), U. S. Code.

It is not necessary to discuss "jurisdictional yardsticks," as found in the regulations of the National Labor Relations Board (1 Labor Law Reporter, C. C. H., paragraph 1610, p. 1614), to determine whether the National Labor Relations Board will assume jurisdiction. It is not necessary to explore what areas in labor controversies are left open to the jurisdiction of the state courts. It is apparent that we have before us in the instant case a question of fact which may be stated as follows: Does the business of Fairlawn Meats, Inc., affect interstate commerce within the terms of the National Labor Management Relations Act? Or, it may be stated: Do the facts herein show that Fairlawn Meats, Inc., is an "industry affecting commerce" within the terms of the National Labor Management Relations Act?

Although it is true that the "jurisdictional yardstick" established by the regulations of the National Labor Relations Board may be helpful as evidence to determine the fact, it is not, in the case before us, the controlling feature.

The evidence herein clearly shows that the business of the plaintiff is purely of a local character. It is limited in the main to Akron and the surrounding area. The volume of business is not large for a city and county as populous as Akron and Summit County; it does not sell any of its products outside of

the state of Ohio. Its purchases from out of this state, both direct and indirect, do not constitute a large portion of the products it offers for sale to the meat-consuming public in Akron and Summit County.

We find, therefore, that there is no burden placed upon, or obstruction of, interstate commerce by any action taken by the parties to this case.

We determine, therefore, that the state courts have jurisdiction to hear the case.

We come now to the second question presented by the facts as shown by the transcript of testimony and the exhibits before us. Should the injunction be granted?

The case which pronounces the policy of the state of Ohio, with respect to organizational picketing, is *Crosby* v. *Rath,* 136 Ohio St., 352, 25 N. E. (2d), 934, and, while it was true that, in that case, there was much evidence of violence which accompanied the picketing, yet the court said, at page 355:

"* * * The thing upon which the defendants are insisting is that the plaintiff discharge her employees unless they become members of one of the defendant unions. There is no reason or convincing authority sustaining the contention of the defendants that they have the right to engage in picketing or boycotting under such circumstances. That this must be the law is clearly indicated by the intolerable and unexplainable predicament in which an employer might well find himself if picketed by two or more hostile unions with each one insisting that the employer discharge his employees unless they become members of that particular union alone."

The latest pronouncement by the Supreme Court of Ohio on the subject of the right to picket for organizational purposes is found in the case of *W. E. Anderson Sons Co.* v. *Union,* 156 Ohio St., 541, 104 N. E. (2d), 22. The syllabus in that case, which establishes the law, says:

"1. Where no unlawful purpose or object is involved, workers may by means of picketing or bannering announce their grievances to the public and thus persuade or seek to persuade prospective employees as well as prospective customers of the person against whom the picketing or bannering is directed from dealing with such person.

"2. A boycott may be defined in general terms as a concerted refrainment from business relations with another, or a concerted persuasion of third persons outside the combination to so refrain. It may be primary where there is a concerted refrainment from business relations with another, or by peaceful means a concerted inducement of others outside the combination to so refrain; or it may be secondary where there is not merely a concerted refrainment from business relations with the person against whom the boycott is directed or by peaceful means a concerted inducement of others outside the combination to so refrain, but an exercise of economic pressure upon such others to cause them to refrain from business relations with the person against whom the boycott is directed, through fear of loss or damage to themselves if they refuse to do so.

"3. Where a building trades union which has a labor dispute with one of several subcontractors on a construction job pickets and banners the construction site for the purpose of inducing the craft employees of the general contractor to quit their employment in concert and thereby bring about a work stoppage on the entire construction job, all for the further purpose of influencing such general contractor to cause the discharge of the subcontractor with whom the union has the labor dispute such picketing and bannering constitute a secondary boycott.

"4. Picketing or bannering as a means of exercising the right of free speech will be afforded constitutional protection so long as it is lawfully conducted, but the right of free speech is predicated on the lawful exercise of such right, and if, through conspiracy or unlawful conduct, the result of its exercise by such means unlawfully injures another in his property rights, the guaranty ceases and the exercise of the claimed right by such means may be enjoined or prohibited.

"5. Picketing or bannering for the purpose of aiding or bringing about a secondary boycott may be enjoined."

This Court of Appeals has had occasion to pass on the right to picket for organizational purposes in the case of *Bean* v. *Local Union No. 698*, 94 Ohio App., 361, 114 N. E. (2d), 445, wherein we said:

"In the absence of a dispute between employer and em-

ployees, or between the union and the employer or employees, a labor union may not engage in organizational picketing, even though peaceful, for the purpose of bringing pressure to bear upon the employer to require his employees to join the union.''

In the instant case, the principal object and purpose of bannering the places of business of Fairlawn Meats, Inc., was for the purpose of forcing the great majority of employees to join the union. The resultant acts of the union to secure their object, such as coercion of the suppliers of meats, and picketing on property under control of Fairlawn Meats, were the result of the failure of the union to secure the organization of the majority of the employees by peaceful means. This failure to convince the employees and the management was then followed by the picketing lines being established.

When we examine the acts of Congress, with respect to national labor relations (Title 29, Chapter 7, Section 151, *et seq.*, U. S. Code), we find that Section 157 of the above act says:

''Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively. through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection * * *.''

And Section 159 says, in part:

''(a) * * * Representatives designated or selected for the purposes of collective bargaining by the *majority* of the employees * * * shall be the exclusive representatives of all the employees in such unit * * *.'' (Emphasis ours.)

It is thus apparent that, even where jurisdiction does lodge in the National Labor Relations Board, there is an opportunity for the union to appeal to that board, but, in the instant case, without a majority of the employees of Fairlawn Meats, it would be a futile act, and the union would lose all right to proceed in the manner it did in this case.

Although counsel for the union insist that the National Labor Relations Board does have jurisdiction, it seems to us that the picketing engaged in herein was part of a plan to avoid an election by such board, and thus deprive the employees by majority vote to select or not to select bargaining representatives.

The declared policy of the United States, through the Labor Management Relations Act, *supra* (Title 29, Section 141 *et seq.,* U. S. Code), is to encourage the practice and procedure of collective bargaining, and to protect the exercise by employees of full freedom of organization and selection of representatives of their own choosing.

It is the public policy of the state of Ohio, as declared in the cases cited, *supra,* that employers may not be picketed for the purpose of coercing their employees to join a union. The Supreme Court of the United States has indicated its approval of such a state policy as adopted by the Legislature of the state of Washington, when it said, in *Building Service Employees International Union* v. *Gazzam,* 339 U. S., 532, 94 L. Ed., 1045, 70 S. Ct., 784, as follows:

"In a state whose public policy is that employers shall not coerce their employees' choice of a bargaining representative, a state court injunction against peaceful picketing by a labor union for the particular purpose of compelling an employer to sign a contract which would coerce his employees' choice of a bargaining representative does not violate the right of free speech guaranteed by the First and Fourteenth Amendments of the federal Constitution.

"(a) Since picketing is more than speech and establishes a *locus in quo* that has far more potential for inducing action than the message the pickets convey, this court upholds a state's restraint of acts and conduct which are an abuse of the right to picket rather than a means of peaceful and truthful publicity.

"(b) The picketing of the employer to compel him to coerce his employees' choice of a bargaining representative was unlawful because it was an attempt to induce a transgression of the state's policy against such coercion of employees."

We do not believe that there is a difference in the effectiveness of the policies so adopted, whether by legislative act or by declaration of the highest judicial authority in the state.

It is declared by Section 158 of the National Labor Management Relations Act, *supra,* to be an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed" to employees

by Section 157 of the Act (right of employees to organize or refrain from such activity). Where, then, as in this case, no election has been held under the federal regulations, and it is shown that many more than a bare majority have indicated a desire not to organize and join the union, it would be an "unfair labor practice" to compel Fairlawn Meats to compel its employees to join a union contrary to their already expressed wishes.

It is the judgment of this court that, since the picketing herein was for organizational purposes only, and not to secure a settlement of grievances among the employees, and since the picketing in part was done on land owned by or under lease to Fairlawn Meats, and since the union by threats and coercion instituted a secondary boycott against Fairlawn Meats, the picketing, although not accompanied by violence, was nevertheless unlawful under the announced policy in Ohio.

The injunction heretofore granted by the trial court shall be continued, and this court will enter the same order with respect to such injunction as was entered by the trial court.

Decree for the appellee, at the costs of appellants.

*Judgment accordingly.*

STEVENS, P. J., and DOYLE, J., concur.