AMALGAMATED MEAT CUTTERS & BUTCHER
WORKMEN OF NORTH AMERICA, LOCAL
NO. 427, AFL, ET AL. *v.* FAIRLAWN
MEATS, INC.

No. 41.   Argued January 16, 1957.—Decided March 25, 1957.

*Mozart G. Ratner* argued the cause for petitioners. With him on the brief were *Joseph M. Jacobs* and *Mortimer Riemer.*

*Stanley Denlinger* argued the cause and filed a brief for respondent.

Briefs of *amici curiae* urging affirmance were filed by *Solicitor General Rankin, Theophil C. Kammholz, Stephen Leonard* and *Dominick L. Manoli* for the National Labor Relations Board, and *Thomas E. Shroyer* and *Milton C. Denbo* for the American Retail Federation et al., and *Clarence D. Laylin* for the Ohio Chamber of Commerce.

A brief of *amici curiae* was filed for the States of Florida, by *Richard W. Ervin,* Attorney General; Georgia, by *Eugene Cook,* Attorney General; Texas, by *John Ben Shepperd,* Attorney General; Vermont, by *Robert T. Stafford,* Attorney General; Virginia, by *J. Lindsay Almond, Jr.,* Attorney General; Wyoming, by *George F. Guy,* Attorney General; and the Wisconsin Employment Relations Board, by *Vernon W. Thomson,* Attorney General, and *Beatrice Lampert,* Assistant Attorney General.

*Herbert B. Cohen,* Attorney General, and *Oscar Bortner,* Assistant Attorney General, filed a brief for the Commonwealth of Pennsylvania, as *amicus curiae.*

*J. Albert Woll* and *Thomas E. Harris* filed a brief for the American Federation of Labor and Congress of Industrial Organizations, as *amicus curiae.*

22

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

Respondent operates three meat markets in the vicinity of Akron, Ohio. All of its sales are intrastate, but of its purchases in one year totaling not quite $900,000, slightly more than $100,000 worth came from outside Ohio directly and as much or more indirectly. Petitioner union, after an unsuccessful attempt to organize respondent's employees, asked respondent for recognition as their bargaining agent and for a union shop contract. When respondent refused to enter into such a contract, the union picketed respondent's stores and put some secondary pressure on its suppliers. Upon respondent's complaint, the Court of Common Pleas enjoined the union from picketing respondent, from trespassing upon respondent's premises and from exerting secondary pressure on the suppliers. Petitioners objected throughout that the jurisdiction of the National Labor Relations Board was exclusive. On appeal, the Ohio Court of Appeals found that respondent's business was "purely of a local character" and interstate commerce, therefore, was not burdened or obstructed. The Court of Appeals held that the union's picketing was unlawful according to Ohio policy, and it continued in effect the injunction granted by the Court of Common Pleas.[1] The Ohio Supreme Court dismissed an appeal "for the reason that no debatable constitutional question is involved."[2] We granted certiorari. 351 U. S. 922.

We do not agree that respondent's interstate purchases were so negligible that its business cannot be said to affect interstate commerce within the meaning of § 2 (7) of the National Labor Relations Act.[3] Cf. *Labor Board* v. *Den-*

---

[1] 99 Ohio App. 517, 135 N. E. 2d 689.
[2] 164 Ohio St. 285, 130 N. E. 2d 237.
[3] 61 Stat. 138, 29 U. S. C. § 152 (7).

*ver Building & Construction Trades Council,* 341 U. S. 675, 683–685. In this case, unlike No. 280, *ante,* p. 1, and No. 50, *post,* p. 26, no effort was made to invoke the jurisdiction of the National Labor Relations Board. Although the extent of respondent's interstate activity seems greater even than that in *Building Trades Council* v. *Kinard Construction Co.,* 346 U. S. 933, we will assume that this is a case where it was obvious that the Board would decline jurisdiction.[4]

On this view of the case, our decision in *Guss* v. *Utah Labor Relations Board, ante,* p. 1, controls. If the proviso to § 10 (a) of the National Labor Relations Act operates to exclude state labor boards from disputes within the National Board's jurisdiction in the absence of a cession agreement, it must also exclude state courts. See *Garner* v. *Teamsters Union,* 346 U. S. 485, 491. The conduct here restrained—an effort by a union not repre-senting a majority of his employees to compel an employer to agree to a union shop contract—is conduct of which the National Act has taken hold. § 8 (b)(2), 61 Stat. 141, 29 U. S. C. § 158 (b)(2). *Garner* v. *Teamsters Union, supra,* teaches that in such circumstances a State cannot afford a remedy parallel to that provided by the Act.

It is urged in this case and its companions, however, that state action should be permitted within the area of commerce which the National Board has elected not to enter when such action is consistent with the policy of the National Act. We stated our belief in *Guss* v. *Utah*

---

[4] The Board's current standards for asserting jurisdiction over retail stores call for annual direct imports from out of state of $1,000,000 or indirect imports of $2,000,000. *Hogue & Knott Super-markets,* 110 N. L. R. B. 543. We leave aside the question whether the presence of secondary pressure on respondent's suppliers would have affected the Board's decision whether to take jurisdiction.

*Labor Relations Board, ante,* at pp. 10–11, that "Congress has expressed its judgment in favor of uniformity." We add that Congress did not leave it to state labor agencies, to state courts or to this Court to decide how consistent with federal policy state law must be. The power to make that decision in the first instance was given to the National Labor Relations Board, guided by the language of the proviso to § 10 (a). This case is an excellent example of one of the reasons why, it may be, Congress was specific in its requirement of uniformity. Petitioners here contend that respondent was guilty of what would be unfair labor practices under the National Act and that the outcome of proceedings before the National Board would, for that reason, have been entirely different from the outcome of the proceedings in the state courts. Without expressing any opinion as to whether the record bears out its factual contention, we note that the opinion of the Ohio Court of Appeals takes no account of the alleged unfair labor practice activity of the employer. Thus, it cannot be said with certainty whether the state court's decree is consistent with the National Act.

One final point remains to be considered. At two of respondent's stores, located in suburban shopping centers, the picketing occurred on land owned by or leased to respondent though open to the public for access to the stores. As one of the reasons for finding the picketing unlawful, the Court of Appeals recited this fact, and "trespassing upon plaintiff's property" is one of the activities specifically enjoined. Whether a State may frame and enforce an injunction aimed narrowly at a trespass of this sort is a question that is not here. Here the unitary judgment of the Ohio court was based on the erroneous premise that it had power to reach the union's conduct in its entirety. Whether its conclusion as to the mere act of trespass would have been the same outside of the con-

text of petitioner's other conduct we cannot know. The judgment therefore is vacated and the case remanded for proceedings not inconsistent with this opinion.

*Vacated and remanded.*

MR. JUSTICE WHITTAKER took no part in the consideration or decision of this case.

[For dissenting opinion of MR. JUSTICE BURTON, joined by MR. JUSTICE CLARK, see *ante*, p. 12.]