Benjamin Brenner, J.
Plaintiff, a manufacturer of TV tables, employing Puerto Bicans in the main, seeks to permanently enjoin the defendant, Seafarers International Union of North America, Marine Allied Workers Division, from recognition picketing for the alleged unlawful objective of destroying plaintiff’s existing collective bargaining agreement with Local 48, United Industrial Unions. Plaintiff claims it to be the policy of this State that unless and until the appropriate Labor Delations Board rules that the existing bargaining contract is illegal, it must be regarded as presumptively valid and as barring recognition picketing. Plaintiff also urged on trial that its activities are local in character.
The defendant union contends that plaintiff’s business is interstate in character and that recognition picketing is its basic right regardless of the existence of the contract between plaintiff and Local 48. It asserts that this court is powerless to enjoin such picketing because of Federal pre-emption under the Taft-Hartley Act and because a valid labor dispute exists by virtue of the invalidity of the agreement between plaintiff and Local 48, which, according to the defendant, is a collusive “ sweetheart” agreement.
Each of the unions claims majority representation, the defendant conceding that it authorized the picketing for recognition purposes following a demand for recognition, that picketing continued until stayed and enjoined by orders of this court, and that while the present proceedings were pending *173 the defendant Med charges of unfair labor practices with the National Labor Relations Board, some of such charges being based upon a claim that the contract between plaintiff and Local 48 is collusive and invalid.
About $35,000 out of a total of $275,000 of plaintiff’s gross annual sales are made to customers outside the State of New York, some of them to department stores. It is not clear whether, and to what extent, the TV tables sold within the State are transshipped or destined for commerce, nor to what extent the steel or other raw materials purchased for manufacture of the tables within the State originate in commerce.
It has been held that the test of commerce is not restricted to the volume of sales and that the smallness of the commerce which is burdened by the dispute is not determinative of its regulation by the board. (National Labor Relations Bd. v. Fainblatt, 306 U. S. 601; Guss v. Utah Labor Relations Bd., 353 U. S. 1; Meat Cutters v. Fairlawn Meats, 353 U. S. 20; San Diego Unions v. Garmon, 353 U. S. 26.) Hence, in view of the nature of the manufactured product, the huge consumption of raw steel obviously imported for such manufacture and the acknowledged out-of-State gross sales of $35,000 annually, the conclusion is inescapable that plaintiff’s activities affect commerce within the meaning of the Taft-Hartley Act.
Having found this to be the fact, the activity complained of is wholly regulated by that act. Since plaintiff has failed, to meet its burden of proof that the picketing was disorderly, violent or in any other way a breach of the peace of the State, this court is barred from interceding. It is now firmly established law, Goodwins, Inc. v. Hagedorn (303 N. Y. 300) notwithstanding, that in the absence of a breach of the peace, not shown in the case at bar to exist, exclusive jurisdiction to regulate the activities affecting commerce rests with the National Labor Relations Board (U. S. Code, tit. 29, § 141; Garner v. Teamsters Union, 346 U. S. 485; Weber v. Anheuser-Busch, 348 U. S. 468; Meat Cutters v. Fairlawn Meats, 353 U. S. 20, supra; San Diego Unions v. Garmon, 353 U. S. 26, supra; Youngdahl v. Rainfair, Inc., 355 U. S. 131; Pleasant Val. Packing Co. v. Talarico, 5 A D 2d 943, even though a proceeding there begun by this defendant remains undetermined; Mine Workers v. Arkansas Flooring Co., 351 U. S. 62).
My attention is drawn to two cases just decided by the United States Supreme Court, Automobile Workers v. Russell (356 U. S. 634) and Machinists v. Gonzales (356 U. S. 617) which grant jurisdiction to State courts in suits against unions by nonstriking workers and expelled union members, co-ordinate with *174 that of the National Labor Relations Board. While these rulings appear to affect commerce cases involving unfair labor practices, I am of the view that they merely affirm the principle implied in Garner v. Teamsters Union (supra) that tortious or violent conduct toward a non-striking worker and wrongful expulsion from a union, while unfair labor practices, are activities not intended by the Taft-Hartley Act to be preempted and so within the competence of the State courts. They do not alter the principle that peaceful recognition picketing remains Federally pre-empted.
This opinion may well terminate at this point, except for several novel issues raised by plaintiff upon trial. It insists that only when unfair labor charges are alleged in the complaint is the State court deprived of power. This, it seems to me, is a specious argument, and were it to be followed, State power would be granted or withheld, depending upon the whim or artistry of the pleader. I believe that whether or not unfair labor practices are alleged in the complaint, there is an exclusion of State power if the activity, in essence, involves a labor controversy within the purport of the act. So, regardless of plaintiff’s failure to so allege, if unfair labor practice contemplated by the Taft-Hartley Act as charged by either party is the gravamen of the controversy, the State court may not intervene, absent improper methods or a breach of the peace.
Plaintiff also argued that evidence concerning the validity or enforcement of the contract between it and Local 48 is inadmissible and that the court was without jurisdiction to hear such evidence, first, because of the presumption of validity claimed for such contract,, and second, because its construction is solely for the national board where the matter is now pending. As to the second ground, the plaintiff relies principally upon Matter of Levinsohn Corp. (Joint Bd. Cloak Makers’ Union (299 N. Y. 454). In that case the court did not permit the employer to challenge the validity of its own contract. Here the challenge is made by the picketing union, not a party to the contract. Moreover, that case involved a test of unit or majority representation as between two recognized unions and not, as here, a direct attack upon recognition picketing. As to the presumptive validity of an existing contract, such presumption is mainly relied upon when viewing motion papers (Metzger Co. v. Fay, 4 A D 2d 436; Baylis v. Quinnonez, 286 App. Div. 1030; General Iron Corp. v. Livingston, 8 Misc 2d 538, affd. 4 A D 2d 959), not when invalidity is established *175 by evidence upon trial. This I perceive to be the reasoning of my distinguished colleague, Mr. Justice McDonald, who, in granting temporary injunctive relief to this plaintiff at Special Term because of the absence of adequate proof in the motion papers that plaintiff participated in commerce, said: “ There is a presumption of validity which attaches to the contract until such time as facts are shown which overcome such presumption.” And where trials were had the courts did not even reach or discuss the question of presumption of validity because of dismissals of suits due to the overriding issue of Federal pre-emption (Pleasant Val. Packing Co. v. Tolarico, 5 A D 2d 943, supra); Spartan Coat, Apron, Towel & Linen Supply Co. v. Simon, 11 Misc 2d 271; 100 East 53rd St. Corner House Restaurant v. Weprecht, N. Y. L. J., May 7, 1958, p. 7, col. 2). My learned colleague, Mr. Justice Baker made a similar disposition in James Knitting Mills v. Sinensky (8 Misc 2d 603).
In attacking defendant’s picketing the plaintiff requests a restricted view of its complaint, namely, the allegation that such picketing is pursued for an unlawful objective, not that it constitutes an unfair labor practice. Yet, upon such attack, it illogically seeks to prevent production of evidence which may tend to refute that very claim. While ordinarily this court cannot inquire into charges of unfair labor practices, it must necessarily do so when it constitutes the defense to an employer’s claim of an unlawful picketing objective which rests upon the proposition that the union is attempting to destroy a good, valid and subsisting bargaining agreement — a proposition which the union must, perforce, meet and challenge in the forum where, against its will, it has been compelled to defend itself. It must also be remembered that despite plaintiff’s claim to the contrary, the relief sought may well be pursued in the national board where the issue is now pending (Weber v. Anheuser-Busch, 348 U. S. 468, supra).
Thus, since plaintiff chose to press its claim of defendant’s unlawful objective in the State court and to rely upon the presumptive validity of its contract with Local 48, the defendant has no alternative but to resist the claim and to present affirmative evidence to overcome or to lessen the effect of such presumption and to demonstrate that the objective of the picketing was lawful. That the court may consider evidence relative to the making and enforcement of an outstanding bargaining contract to determine whether the picketing designed to destroy it is in fact lawful, seems to me to be not only logical *176 but inherent in the problem presented, as may be implied from the very language employed in Metzger Co. v. Fay (4 A D 2d 436, supra).
The credible evidence here is that the presumption of validity of the contract between the plaintiff and Local 48 has been overcome. I find that the contract was largely unenforced in behalf of plaintiff’s employees until such time as defendant began its activities; that Local 48 did little or nothing to hold meetings, present grievances or improve the terms of employment before picketing began; that until such picketing the evidence is unconvincing that any of the contract provisions for pay increases above the Federal minimum wage, vacation pay, welfare grants, etc., were forthcoming; and that about two months prior to the picketing some 12 workers, then . employed by plaintiff, a number much larger than claimed by Local 48, were actually pledged to the defendant union. The defendant has thus demonstrated that it pursued a lawful objective in picketing for recognition, regardless of which union actually represents a majority of plaintiff’s workers (Meat Cutters v. Fairlawn Meats, supra) and regardless of the pendency of the charges at the national board (Garner v. Teamsters Union, 346 U. S. 485, supra).
Finally, plaintiff relies upon what it contends to be the public policy of this State to enjoin picketing where its objective is to compel the making of an agreement in breach of a collective bargaining agreement in being. The United States Supreme Court has denied injunctive relief on pre-emption grounds even though the union activity was violative of State law (General Drivers v. American Tobacco Co., 348 U. S. 978; Teamsters Union v. Kerrigan Iron Works, 353 U. S. 968). However, in support of its own contention, plaintiff cites several authorities which in effect deprecate the destruction of a business whose owners are merely charged with unproved collusive conduct, relying heavily on Teamsters Union v. Vogt, Inc. (354 U. S. 284); Metzger Co. v. Fay (4 A D 2d 436, supra) and General Iron Corp. v. Livingston (8 Misc 2d 538, affd. 4 A D 2d 959, supra). It is the essence of these holdings that to picket while the employer has a bona fide collective agreement with a rival union, is just as reprehensible as it is to picket in a disorderly or violent manner or by other improper or unlawful means. It will be noted that Teamsters Union v. Vogt, Inc. (supra) and, possibly, Metzger Co. v. Fay (supra) deal with local or intrastate activities and that both the latter case and General Iron Corp. v. Livingston (supra) involve injunctions prior to trial. The moral base upon which these authorities rest *177 is that in the absence of proof to the contrary a presumed valid existing contract amply protects the workers. It is fair, therefore, to conclude that if on trial the contrary is shown, and, as here, it becomes clear that the subsisting contract is truly for the protection of the employer rather than its workers, the moral base relied upon disintegrates. In short, if arguments are advanced by the employer for a public policy which frowns upon picketing designed to destroy an existing valid agreement, like considerations must be entertained in behalf of the workers if the picketing is shown to be in fact conducted to destroy a spurious agreement or one which is not being enforced in their interest.
The defendant is accordingly entitled to judgment vacating the injunction pendente lite herein and dismissing the complaint. This opinion constitutes the findings of fact and law.
Submit decree on 10 days’ notice.