Woodrow W. BUSSEY, Appellant,

v.

PLUMBERS LOCAL NO. 3 OF UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF PLUMBING AND PIPEFITTING INDUSTRY OF UNITED STATES AND CANADA, The United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, Michael C. McDonough, W. O. Jaenson, Myron L. Coombs, H. L. Everetty, Jack Weingart, Jr., Ed Evan, Emil Helling and A. G. Beck, Appellees.

No. 6488.

United States Court of Appeals
Tenth Circuit.

Jan. 6, 1961.

Neill P. McInnis, of McInnis & Sullivan, Oklahoma City, Okl. (Bruce Ownbey, Denver, Colo., on the brief), for appellant.

Philip Hornbein, Jr., Denver, Colo., for appellees.

Before BRATTON, PICKETT and BREITENSTEIN, Circuit Judges.

PICKETT, Circuit Judge.

Bussey brought this action in the Colorado District Court for the City and County of Denver, to recover damages resulting from his expulsion from the defendant union, Plumbers Local No. 3

of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada. The case was removed to the United States District Court for the District of Colorado on the ground that it was founded on claims arising under the Constitution and laws of the United States. The trial court was of the opinion that the relief sought in the third amended complaint was within the exclusive jurisdiction of the National Labor Relations Board, and dismissed the action.

In substance, the complaint alleges that the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry was engaged in the business of organizing persons employed as plumbers and similar enterprises in the United States and Canada; that Bussey, at the time of his expulsion, was a member in good standing of Local No. 3 at Denver, Colorado; that certain officers, the executive board, and certain members of Local No. 3, individually and jointly, wrongfully, in bad faith, motivated by anger and fear, maliciously, tortiously, willfully, knowingly and intentionally expelled Bussey from the local union, in violation of its Constitution and By-Laws;[1] that as a result of the defendants' tortious conduct in expelling Bussey, and the refusal to give approval to subsequent offers of employment, he has been unable to obtain employment as a plumber because of his non-union status. Bussey sought damages for the reasonable value of the loss occasioned by his lack of union membership which deprived him of the right to earn a living. Punitive damages were also demanded, together with damages for mental suffering caused by the alleged willful and wrongful acts.

▆▆▆ Disputes between unions and their members have been before the

courts on numerous occasions. In such cases, jurisdiction of either state or federal courts is to be determined from the scope of the National Labor Relations Act, as amended.[2] (Herein referred to as the "Act.") It is well settled that, regardless of the form of action, if the activities complained of are protected or regulated by provisions of the Act, the procedure provided for therein is exclusive, and state jurisdiction must yield. Plumbers, etc., Local No. 298 v. County of Door, 359 U.S. 354, 79 S.Ct. 844, 3 L.Ed.2d 872; San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S. Ct. 773, 3 L.Ed.2d 775; Guss v. Utah Labor Relations Board, 353 U.S. 1, 77 S.Ct. 598, 609, 1 L.Ed.2d 601; Amalgamated Meat Cutters, etc. v. Fairlawn Meats, Inc., 353 U.S. 20, 77 S.Ct. 604, 1 L.Ed.2d 613; Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546; Garner v. Teamsters, etc., Union, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228. See International Ass'n of Machinists v. Gonzales, 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed.2d 1018. But all disputes and controversies between employees and unions are not within the provisions of the Act and subject to the jurisdiction of the National Labor Relations Board. International Union, etc., U. A. W. v. Russell, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030. In United Const. Workers, etc. v. Laburnum Const. Corp., 347 U.S. 656, 663, 74 S.Ct. 833, 837, 98 L.Ed. 1025, the Supreme Court stated:

"Here Congress has neither provided nor suggested any substitute for the traditional state court procedure for collecting damages for injuries caused by tortious conduct. For us to cut off the injured respondent from this right of recovery will deprive it of its property without recourse or compensation. To

---

1. The complaint sets forth in detail the controversy, and the reasons therefor, existing between Bussey and the Local, which resulted in charges being filed against him and his expulsion after a union trial. He complains that the trial was unauthorized and the judgment was

wrongful, oppressive, malicious, arbitrary and in violation of his rights under the Local Constitution and By-Laws.

2. 49 Stat. 449 (1935), as amended, 29 U.S.C.A. §§ 141, 187.

do so will, in effect, grant petitioner immunity from liability for their tortious conduct * * *."

In referring to Garner v. Teamsters, etc., Union, supra, the court said, at page 665 of 347 U.S., at page 838 of 74 S.Ct.:

"To the extent that Congress prescribed preventive procedure against unfair labor practices, that case recognized that the Act excluded conflicting state procedure to the same end. To the extent, however, that Congress has not prescribed procedure for dealing with the consequences of tortious conduct already committed, there is no ground for concluding that existing criminal penalties or liabilities for tortious conduct have been eliminated. The care we took in the Garner case to demonstrate the existing conflict between state and federal administrative remedies in that case was, itself, a recognition that if no conflict had existed, the state procedure would have survived. The primarily private nature of claims for damages under state law also distinguishes them in a measure from the public nature of the regulation of future labor relations under federal law.

"The Labor Management Relations Act sets up no general compensatory procedure except in such minor supplementary ways as the reinstatement of wrongfully discharged employees with back pay. 61 Stat. 147, 29 U.S.C. (1952 ed.) § 160(c). See also Labor Board v. Electrical Workers, 346 U.S. 464 [74 S.Ct. 172, 98 L.Ed. 195]."

In San Diego Building Trades Council v. Garmon, supra, the plaintiff sought an injunction against the union for unlawful picketing and for damages. The Supreme Court reviewed many of its decisions dealing with the exclusive jurisdiction of the National Labor Relations Board, and, while recognizing that in certain types of cases states had jurisdiction, the court, in general language, attempted to define the areas in which the United States has preempted the field. The court said [359 U.S. 236, 79 S.Ct. 779]:

"When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law * * *."

In holding that the State of California had no jurisdiction to grant an injunction or damages, it was assumed that "the behavior of the petitioning unions constituted an unfair labor practice." The court, however, was careful to point out that:

" * * * due regard for the presuppositions of our embracing federal system, including the principle of diffusion of power not as a matter of doctrinaire localism but as a promoter of democracy, has required us not to find withdrawal from the States of power to regulate where the activity regulated was a merely peripheral concern of the Labor Management Relations Act. See International Assn. of Machinists v. Gonzales, 356 U.S. 617 [78 S.Ct. 923, 2 L.Ed.2d 1018]. Or where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." (Footnote omitted.)

The Garmon case, while recognizing the remote possibility of the activities constituting an unfair labor practice, considered cases like International Ass'n of Machinists v. Gonzales, supra, to be only in the periphery of the Act's jurisdiction, and there is no indication that

the court intended to overrule or curtail the effect of that decision. There is no material difference between the facts of this case and those of Gonzales. Each sought damages for the wrongful expulsion, from a union, which curtailed the plaintiff's ability to find work in his craft. The court, in Gonzales, recognized that expulsion from a union might, in a particular case, constitute unfair labor practice and be subject to action by the National Labor Relations Board. However, it said [356 U.S. 617, 78 S.Ct. 925]:

> "But the protection of union members in their rights as members from arbitrary conduct by unions and union officers has not been undertaken by federal law, and indeed the assertion of any such power has been expressly denied. The proviso to § 8(b) (1) of the Act states that 'this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein * * *.' 61 Stat. 141, 29 U.S.C. § 158(b) (1). The present controversy is precisely one that gives legal efficacy under state law to the rules prescribed by a labor organization for 'retention of membership therein.' Thus, to preclude a state court from exerting its traditional jurisdiction to determine and enforce the rights of union membership would in many cases leave an unjustly ousted member without remedy for the restoration of his important union rights. Such a drastic result, on the remote possibility of some entanglement with the Board's enforcement of the national policy, would require a more compelling indication of congressional will than can be found in the interstices of the Taft-Hartley Act. See United Constr. Workers v. Laburnum Constr. Corp., 347 U.S. 656 [74 S.Ct. 833, 98 L.Ed. 1025]."

The court further states:

> "If, as we held in the Laburnum case, certain state causes of action sounding in tort are not displaced simply because there may be an argumentative coincidence in the facts adducible in the tort action and a plausible proceeding before the National Labor Relations Board, a state remedy for breach of contract also ought not be displaced by such evidentiary coincidence when the possibility of conflict with federal policy is similarly remote. The possibility of conflict from the court's award of damages in the present case is no greater than from its order that respondent be restored to membership. In either case the potential conflict is too contingent, too remotely related to the public interest expressed in the Taft-Hartley Act, to justify depriving state courts of jurisdiction to vindicate the personal rights of an ousted union member * * *."

■■■ From these decisions it is abundantly clear that all aspects of labor activities do not come within the jurisdiction of the Act. We conclude that the allegations of the complaint are not such as to bring the case within the field which has been preempted by the Act, and therefore this is not an action arising under the Constitution and laws of the United States. There being no allegation of diversity between the plaintiff and the defendants, the case was not removable, and the district court was without jurisdiction for any purpose including the consideration of a motion to dismiss. 28 U.S.C.A. § 1441; American Fire & Cas. Co. v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702, 19 A.L.R.2d 738; In re Bear River Drainage District, 10 Cir., 267 F. 2d 849.

The order of dismissal is reversed, with directions to remand the case to the state court.

BREITENSTEIN, Circuit Judge (concurring in result).

The record in this case discloses no basis for federal jurisdiction. There is no diversity and no right asserted under the Constitution, laws, or treaties of the United States. Specifically, there is no

right asserted by the plaintiff-appellant under the National Labor Relations Act. Hence, no purpose is served by any discussion as to whether the field of controversy is or is not pre-empted by that Act. As I see it, the case should be reversed with directions to remand to the state court and we should express no opinion on any other issue presented.