HOOD, Judge.
Plaintiff instituted this suit against Arkansas Oak Flooring Company and its surety, S. C. Griffith, to recover damages alleged to have resulted from the erroneous issuance of an injunction restraining members of plaintiff union from picketing the premises of the defendant company. This proceeding is an aftermath of Arkansas Oak Flooring Co. v. United Mine Workers, 227 La. 1109, 81 So.2d 413, in which the United States Supreme Court finally held that a state court could not enjoin peaceful picketing under the circumstances therein presented. See United Mine Workers v. Arkansas Oak Flooring Co., 351 U.S. 62, 76 S.Ct. 559, 100 L.Ed. 941. The facts leading up to this litigation, as correctly stated by the trial judge, are:
“Defendant is a manufacturing concern engaged in interstate commerce and operates a plant in Alexandria, Louisiana. A majority of its plant employees, 174 of the 225 employees, selected plaintiff as their bargaining agent and, on February 24, 1954, this fact was made known to George C. Fowler, acting manager of defendant’s plant. Mr. Fowler refused to enter into bargaining negotiations with plaintiff union because it had not been certified and was not recognized by the National Labor Relations Board, its officers having failed, among other things, to execute non-communist oaths as required by Section 9(h) of the National Labor Relations Act, commonly called the Taft-Hartley Act. When defendant would not bargain, plaintiff set up a picket line, manned by employees of defendant, at’ the plant and on public streets for the purpose of obtaining recognition of its agency and forcing unionization of the business.
“On March 2, 1954, the company instituted suit against the union and various individuals and obtained a temporary restraining order against further picketing. After a hearing on a rule nisi, a preliminary injunction issued, and later, after a trial of the merits was had on the same evidence adduced at the hearing for a preliminary injunction, a permanent injunction was issued.
“On a devolutive appeal to the Supreme Court of the State of Louisiana the judgment of the lower court was affirmed, it being the view of the Supreme Court that an employer, sustaining irreparable damage to its business as the direct result of the picketing of its plant by a labor union with which it had refused to bargain because the union was not recognized by the National Labor Relations Board, was entitled to seek equitable redress in the courts of this state upon showing that the only forum (National Labor Relations Board) before which it was ordinarily entitled to bring its complaint, would not entertain jurisdiction on the ground that the union was not certified as required by Federal law. See 227 La. 1109, 81 So.2d 413. On writ of certiorari, the Supreme Court of the United States reversed, holding, in essence, that the employer was bereft of remedy as long as the picketing was peaceful. See 351 U.S. 62, 76 S.Ct. 559, 100 L.Ed. 941.
“After this decree by the Supreme Court of the United States, plaintiff filed the present suit for damages resulting from the erroneous issuance of the injunction. Plaintiff prayed for judgment against the Arkansas Oak Flooring Company and S. C. Griffith, surety on the injunction bond, for court costs, attorneys fees, printing briefs, travel expenses of attorneys, and loss of dues which plaintiff alleges it failed to collect from the union members while the injunction was in force. De *217 fendants admitted liability for court costs and deposited $828.11 in the Registry of the Court, but as to all other items claimed, the defendants filed an exception of no cause of action based upon the jurisprudence of Louisiana to the effect that a litigant who is successful in dissolving an injunction after a trial on the merits may not recover as damages such things as attorneys fees, cost of printing briefs, and other items of damage like those claimed by the plaintiff.
“This court (the district court) sustained the exception of no cause of action and dismissed the suit. However, on appeal the Supreme Court of Louisiana reversed and remanded the case for trial on the demands contained in plaintiff’s petition. See 238 La. 108, 113 So.2d 899.
“The Supreme Court of Louisiana held that the bond required by Section 6 of the Little Norris-LaGuardia Act, R.S. 23:844, is different from the bond that must be given in ordinary injunction cases. The Court held that this portion of the Little Norris-LaGuardia Act was not simply procedural but changed our substantive law on injunctions in labor disputes so as to provide that this statutory bond is conditioned upon the payment to the defendant in the injunction proceedings of any expenses, including attorneys fees and other special damages that may be incurred in the defense of the case if it be ultimately determined from the merits that the injunction was erroneously issued. Thus the Court held that the ordinary rule applicable in injunction cases, that attorneys fees and other special damages cannot be claimed after a trial on the merits, does not obtain when the suit is directed against liability on the bond filed in proceedings involving a labor dispute. The Court held further that the extraordinary relief granted by this statute is limited to the amount of the surety bond and that therefore the maximum recovery in this case would be $10,000.00.”
After this case was remanded to the trial court for further proceedings, the defendants filed an exception to the jurisdiction of the court ratione materiae. The trial judge maintained this exception on the authority of San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775, which was decided subsequent to the decision of the Supreme Court of the United States in the instant case. From this judgment dismissing its suit, plaintiff has appealed to this court.
Both plaintiff and defendants concede that the determination of the issues presented here will depend upon the interpretation which is placed on the decision of the United States Supreme Court in the Gar-mon case, viz., whether the instant case falls within the area of labor-management relations in which state courts may adjudicate or whether it falls within the area preempted by Congress.
It is now well settled that where labor practices are either protected or prohibited by the Taft-Hartley Act, 29 U.S.C.A. § 151 et seq., Congress has pre-empted the field in labor relations matters which affect interstate commerce and has vested exclusive jurisdiction in the National Labor Relations Board to determine such labor disputes. It is equally well settled, however, that Congress did not intend to withdraw, and has not withdrawn, from the states all jurisdiction over labor relations matters which affect interstate commerce. Garner v. Teamsters, Chauffeurs and Helpers Local Union No. 776, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228; United Construction Workers, etc. v. Laburnum Construction Corp., 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025; Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546; Guss v. Utah Labor Relations Board, 353 U.S. 1, 77 S.Ct. 598, 77 S.Ct. 609, 1 L.Ed.2d 601; Amalgamated Meat Cut., etc. v. Fairlawn Meats, 353 U.S. 20, 77 S.Ct. 604, 1 L.Ed.2d 613; International Union, etc. v. Russell, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed. *218 2d 1030, International Ass’n of Machinists v. Gonzales, 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed.2d 1018.
In Garner v. Teamsters, Chauffeurs, and Helpers, etc., supra [346 U.S. 485, 74 S.Ct. 164], although the controversy at issue there was held to be within the exclusive jurisdiction of federal authority, the U. S. Supreme Court said:
“The national Labor Management Relations Act, as we have before pointed out, leaves much to the states, though Congress has refrained from telling us how much. We must spell out from conflicting indications of congressional will the area in which state action is still permissible.”
In the Laburnum case, supra, the United States Supreme Court upheld a state court award of punitive damages in a common law tort action against a union which had threatened and intimidated the officers and employees of the Laburnum Construction Corporation with violence to such a degree that the corporation was compelled to abandon its construction project. Although the action taken by the union was admittedly an unfair labor practice and was within the jurisdiction of the National Labor Relations Board, the Court said [347 U.S. 656, 74 S.Ct. 838]:
“To the extent that Congress prescribed preventive procedure, against unfair labor practices, (the Garner case) recognized that the Act excluded conflicting state procedure to the same end. To the extent, however, that Congress has not prescribed procedure for dealing with the consequences of tortious conduct already committed, there is no ground for concluding that existing criminal penalties or liabilities for tor-tious conduct have been eliminated. The care we took in the Garner case to demonstrate the existing conflict between state and federal administrative remedies in that case was, itself, a recognition that if no conflict had existed, the state procedure would have survived. The primarily private nature of claims for damages under state lam also distinguishes them in a measure from the public nature of the regulation of future labor relations under federal law.” (Emphasis added.)
In Weber v. Anheuser-Busch, Inc., supra [348 U.S. 468, 75 S.Ct. 488], the Supreme Court said:
“By the Taft-Hartley Act, Congress did not exhaust the full sweep of legislative power over industrial relations given by the Commerce Clause. Congress formulated a code whereby it outlawed some aspects of labor activities and left others free for the operation of economic forces. As to both categories, the areas that have been preempted by federal authority and thereby withdrawn from state power are not susceptible of delimitation by fixed metes and bounds. Obvious conflict, actual or potential, leads to easy judicial exclusion of state action. Such was the situation in Garner v. Teamsters, Chauffeurs and Helpers Local Union No. 776, supra. But as the opinion in that case recalled, the Labor Management Relations Act ‘leaves much to the states, though Congress has refrained from telling us how much.’ 346 U.S. at page 488, 74 S.Ct. at page 164. This penumbral area can be rendered progressively clear only by the course of litigation.” (Emphasis added.)
In the Russell case, supra, plaintiff brought suit in an Alabama state court to recover damages for loss of earnings, mental anguish, and punitive damages against a labor union whose picket line allegedly prevented plaintiff from entering the plant where he worked. In affirming the jurisdiction of the state court to award damages, the United States Supreme Court said [356 U.S. 634, 7 S.Ct. 937]:
“If an award of damages by a state court for conduct such as is involved in the present case is not otherwise pro *219 hibited by the Federal Acts, it certainly is not prohibited by the provisions of § 10(c). This section is far from being an express grant of exclusive jurisdiction superseding common-law actions, by either an employer or an employee, to recover damages caused by the tortious conduct of a union. To make an award, the Board must first be convinced that the award would ‘effectuate the policies’ of the Act. ‘The remedy of back pay, it must be remembered, is entrusted to the Board’s discretion; it is not mechanically compelled by the Act.’ * * * The power to order affirmative relief under § 10(c) is merely incidental to the primary purpose of Congress to stop and to prevent unfair labor practices. Congress did not establish a general scheme authorising the Board to azvard full compensatory damages for injuries caused by wrongful conduct. * * *
ífí íjí iji
“In this case there is a possibility that both the Board and the state courts have jurisdiction to award lost pay. However, that possibility does not create the kind of ‘conflict’ of remedies referred to in Laburnum. Our cases which hold that state jurisdiction is preempted are distinguishable. In them we have been concerned lest one forum would enjoin, as illegal, conduct which the other forum would find legal, or that the state courts would restrict the exercise of rights guaranteed by the Federal Acts.
“In the instant case, there would be no ‘conflict’ even if one forum awarded back pay and the other did not. There is nothing inconsistent in holding that an employee may recover lost wages as damages in a tort action under state law, and also holding that the award of such damages is not necessary to effectuate the purposes of the Federal Act.
‡ ‡ ‡ ‡
“ * * * We conclude that an employee’s right to recover, in the state courts, all damages caused him by this kind of tortious conduct cannot fairly be said to be pre-empted without a clearer declaration of congressional policy than we find here. * * * ” (Emphasis added.)
In International Ass’n of Machinists v. Gonzales, supra, the plaintiff, a labor union member, claimed to have been expelled from membership in the defendant union in violation of his rights under the constitution and by-laws of the union. The state court ordered plaintiff reinstated and awarded him damages for lost wages and physical and mental suffering. In affirming the judgment awarding damages, the United States Supreme Court said [356 U.S. 617, 78 S.Ct. 924] :
“ * * * As Garner v. Teamsters C. & H. Local Union No. 776, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228, could not avoid deciding, the Taft-Hartley Act undoubtedly carries implications of exclusive federal authority. Congress withdrew from the States much that had theretofore rested with them. But the other half of what was pronounced in Garner — that the Act ‘leaves much to the states’ — is no less important. * * * The statutory implications concerning what has been taken from the States and what has been left to them are of a Delphic nature, to be translated into concreteness by the process of litigating elucidation. * * *
‡ sje sfí
‘‘Although petitioners do not claim that the state court lacked jurisdiction to order respondent’s reinstatement, they do contend that it was without power to fill out this remedy by an award of damages for loss of wages and suffering resulting from the breach of contract. No radiation of the Taft-Hartley Act requires us thus to mutilate the comprehensive relief of equity *220 and reach such an incongruous adjustment of federal-state relations touching the regulation of labor. The National Labor Relations Board could not have given respondent the relief that California gave him according to its local law of contracts and damages. Although, if the union’s conduct constituted an unfair labor practice the Board might possibly have been empowered to award back pay, in no event could it mulct in damages for mental or physical suffering. And the possibility of partial relief from the Board does not, in such a case as is here presented, deprive a party of available state remedies for all damages suffered. * * *
"If, as zve held in the Laburnum case, certain state causes of action sounding in tort are not displaced simply because there may be an argumentative coincidence in the facts adduciable in the tort action and a plausible proceeding before the National Labor Relations Board, a state remedy for breach of contract also ought not be displaced by such evidentiary coincidence when the possibility of conflict with federal policy is similarly remote. The possibility of conflict from the court’s award of damages in the present case is no greater than from its order that respondent be restored to membership. In either case the potential conflict it too contingent, too remotely related to the public interest expressed in the Taft-Hartley Act, to justify depriving state courts of jurisdiction to vindicate the personal rights of an ousted union member. * * (Emphasis added).
Notwithstanding the earlier pronouncements of the United States Supreme Court that Congress has not pre-empted the field of labor-management relations in all its broad aspects, counsel for defendants contends that in the recent decision of San Diego Building Trades Council v. Garmon, supra, the court has now indicated that the entire field of litigation arising out of labor-management disputes has been pre-empted by Congress, and that, consequently, Louisiana state courts have no jurisdiction in this case. In the Garmon case, the question presented to the United States Supreme Court was whether a California state court had jurisdiction to award damages to an employer arising out of peaceful union picketing which the Court had previously held could not be enjoined by the employer. Upon the employer’s application to the National Labor Relations Board, that agency declined jurisdiction on the ground that the amount of interstate commerce involved did not meet the Board’s monetary standards for taking jurisdiction. The California Supreme Court held that the union activity was an unfair labor practice under Sec. 8(b) (2) of the National Labor Relations Act, 29 U.S.C.A. § 158(b) (2), and awarded damages to the employer on the ground that such activity constituted a tort under state law. In reversing the state court’s judgment awarding damages and holding that state court jurisdiction conflicted with the attempt of Congress to provide a uniform scheme of regulating labor-management disputes, the Supreme Court said [259 U.S. 236, 79 S.Ct. 778]:
“In determining the extent to which state regulation must yield to subordinating federal authority, we have been concerned with delimiting areas of potential conflict; potential conflict of rules of lazv, of remedy, and of administration. * * * We have necessarily been concerned with the potential conflict of two law-enforcing authorities, with the disharmonies inherent in two systems, one federal the other state, of inconsistent standards of substantive law and differing remedial schemes. But the unifying consideration of our decisions has been regard to the fact that Congress has entrusted administration of the labor policy for the Nation to a centralized administrative agency, armed with its own procedures, and equipped with its *221 specialized knowledge and cumulative experience. * * *
“ * * * Thus, judicial concern has necessarily focused on the nature of the activities which the States have sought to regulate, rather than on the method of regulation adopted. When the exercise of state power over a particular area of activity threatened interference zvith the clearly indicated policy of industrial relations, it has been judicially necessary to prechide the States from acting. (Citing the Anheuser-Busch and Garner cases.) However, due regard for the presuppositions of our embracing federal system, including the principle of diffusion of power not as a matter of doctrinaire localism but as a promoter of democracy, has required us not to find withdrawal from the States of power to regulate where the activity regulated was a merely peripheral concern of the Labor Management Relations Act. See International Ass’n of Machinists v. Gonzales, * * *. Or where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act. (Citing the Russell and Laburnum cases.)
ip % ‡ * *
“ * * * Since the National Labor Relations Board has not adjudicated the status of the conduct for which the State of California seeks to give a remedy in damages, and since such activity is arguably within the compass of § 7 or § 8 of the Act, the State’s jurisdiction is displaced.
“Nor is it significant that California asserted its power to give damages rather than to enjoin what the Board may restrain though it could not compensate. Our concern is with delimiting areas of conduct which must be free from state regulation if national policy is to be left unhampered. Such regulation can be as effectively exerted through an award of damages as .through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy. * * * It may be that an award of damages in a particular situation will not, in fact, conflict with the active assertion of federal authority. * * *
“It is true that we have allowed the States to grant compensation for the consequences, as defined by the traditional law of torts, of conduct marked by violence and imminent threats to the public order. International Union, * * * v. Russell, * * *; United Construction Workers, etc. v. Laburnum Const. Corp., * * *. State jurisdiction has prevailed in these situations because the compelling state interest, in the scheme of our federalism, in the maintenance of domestic peace is not overriden in the absence of clearly expressed congressional direction. We recognize that the opinion in United Construction Workers, etc. v. Laburnum Const. Corp., * * *, found support in the fact that the state remedy had no federal counterpart. But that decision was determined, as is demonstrated by the question to which review was restricted, by the ‘type of conduct’ involved, i. e., ‘intimidation and threats of violence.’ ” (Emphasis added.)
When a question is presented as to whether a particular controversy is within state jurisdiction or is in the pre-empted field, except as to those relatively few issues already determined by the United States Supreme Court, it is necessary to analyze the basic purposes of the National Labor Relations Act and the presumed intent of the Congress, as well as the existing jurisprudence on that subject. In so doing, the state courts, like the Supreme Court of *222 the United States, must give “application to congressional incompletion.” See San Diego Building Trades Council, etc. v. Garmon, 359 U.S. 236, 240, 79 S.Ct. 773, 777.
In the Garmon case it was determined that the award of damages by a state court would conflict with federal authority in the field of labor-management relations, as provided in the National Labor Relations Act. Our interpretation of the Garmon case is that if no such conflict exists, state courts may exercise jurisdiction even though the controversy may have some connection with labor-management relations in interstate commerce. In our opinion, the enforcement of a claim for damages in a state court for the issuance of an illegal injunction by a court which did not have jurisdiction of the matter in controversy does not in any manner conflict with the material policy in the regulation of industrial relations.
The original action instituted against plaintiff by the defendant in this case, which resulted in the granting of an illegal injunction by the state court, did relate to a “protected activity” as defined in the National Labor Relations Act. The instant suit, however, is at most of “merely peripheral concern,” and in our opinion, the exercise of jurisdiction by the state court in this suit for damages for the wrongful issuance of an injunction does not conflict with federal regulation of labor-management relations in interstate commerce. Mr. Justice Frankfurter, the author of the majority opinions in the Anheuser-Busch and Gonzales cases, was careful to point out in the Garmon opinion that “it may be that an award of damages in a particular situation will not, in fact, conflict with the active assertion of federal authority.” The possibility of conflict with the uniform regulation of labor-management relations in the instant case is far more remote than was the possibility in the Anheuser-Busch and Gonzales cases.
Unlike the Garmon case, the instant action is predicated on a bond required by' Louisiana law to be posted by the complainant seeking an injunction in a labor dispute. The express purpose of such security is “to recompense those enjoined for any loss, expense, or damage caused by the improvident or erroneous issuance of such order or injunction.” LSA-R.S. 23 :844. This is not an attempt by the state legislature to provide an alternative method of regulating labor disputes, as was the award of tort damages in the Garmon case. On the contrary, the posting of such a bond protects those enjoined, whether the injunction is declared invalid by state or federal courts. This is clearly a remedy which the state is competent to provide, and which has not been provided by the National Labor Relations Act.
We are not unmindful of the fact that when the issue of the legality of the injunction in the instant case was presented to the United States Supreme Court, that Court said [351 U.S. 62, 76 S.Ct. 563]:
“There is no doubt that, if the union had filed the data and affidavits required by § 9(f), (g) and (h), the complaint, under the circumstances of this case, would have had to be dismissed by the state court for lack of jurisdiction, and that, if an injunction were sought through the National Labor Relations Board, the request would have had to be denied on the merits. Under those circumstances, the Board would have had jurisdiction of the issue to the exclusion of the state court. * * * In the absence of any bona fide dispute as to the existence of the required majority of eligible employees, the employer’s denial of recognition of the union would have violated § 8(a) (5) of the Act.”
But the fact that, under certain circumstances, this labor dispute might have been adjudicated by the National Labor Relations Board does not detract from the fact that an illegal injunction was actually issued by the state court in the instant case, and that federal law provides no *223 remedy for the one seeking recompense in damages for obtaining the dissolution of the injunction. The relief sought here, therefore, does not infringe upon that area of regulation which Congress withdrew from the jurisdiction of state courts. The private nature of such a claim for damages under a state statute requiring an indemnity bond may readily be distinguished from the public and nationwide scope of the regulation of labor-management relations under federal law.
State courts in other jurisdictions have likewise held that the decision of the Supreme Court in the Garmon case does not preclude state court jurisdiction in every controversy involving labor-management relations. Grunwald-Marx, Inc. v. Los Angeles Joint Board, etc., 52 Cal.2d 568, 343 P.2d 23 (Aug. 5, 1959); Cooperative Refinery Association v. Williams, 185 Kan. 410, 345 P.2d 709 (Nov. 7, 1959); Miller v. Kansas City Power & Light Company, Mo.App., 332 S.W.2d 18 (Feb. 1, 1960); Dempsey v. Great Atlantic and Pacific Tea Company, 24 Misc.2d 98, 197 N.Y.S.2d 744 (Mar. 21, 1960); Gainey v. Local 71, International Bro. of Teamsters, Etc., 252 N.C. 256, 113 S.E.2d 594 (Apr. 6, 1960); Wax v. International Mailers Union, 400 Pa. 173, 161 A.2d 603, 609 (June 3, 1960). In the last cited case the Supreme Court of Pennsylvania said:
“We read the Garmon decision as Justice Harlan reads it. Out of the intricate maze of prior opinions, their distinguishing characteristics and their attending confusion both to the bench and bar, the Supreme Court in one landmark case has created order. We can add nothing to the language used by Justice Frankfurter in so doing. He has directed attention to the significant criteria by which both the state and federal judiciary must determine whether jurisdiction exists in these labor situations. .We are to be concerned solely with delimiting the areas of potential conflict between the two law-enforcing authorities, and in so doing, we should focus on the nature of the activities rather than on the method of regulation. The unifying consideration should always be that Congress has entrusted responsibility in this area to an administrative agency, the N.L.R.B., equipped with specialized procedures and peculiar expertise, to which body primary determinations of jurisdiction should be referred in order to effectuate the intent of Congress in the Taft-Hartley Act, to fashion a national labor policy. The test given us by the Supreme Court to apply is not at all complex. Is the activity arguably within § 7 or § 8? If it is, then the jurisdiction of state and federal courts is ousted. Only a subsequent determination by the N.L.R.B. that the activity is neither protected nor prohibited can vest jurisdiction once again in our courts.”
Since we have concluded that the present action cannot arguably come within the provisions of the Taft-Hartley Act and that no infringement on the federally preempted area of labor-management relations-can exist if the action continues its course in the courts of this State, we must also conclude that the trial judge erred in maintaining defendant’s exception to the jurisdiction of the state court ratione ma-teriae. Accordingly, the judgment of the trial court is hereby reversed and the case is remanded to the district court for further proceedings. The costs of this appeal are assessed to defendants-appellees, and the assessment of all other costs will be determined upon the final disposition of the suit.
Reversed and remanded.